**SERVICE UNLIMITED, INC.,**
Plaintiff–Appellant,

v.

**Ronald ELDER and Edith Elder,**
Defendants–Appellees.

No. 94–1737.

Court of Appeals of Iowa.

Nov. 27, 1995.

Daniel DenBeste of Elderkin & Pirnie, P.L.C., Cedar Rapids, for appellant.

* Senior judge from the Fifth Judicial District serving on this court by order of the Iowa Supreme Court.

Ronald W. Wendt of Nazette, Marner, Good, Wendt & Knoll, L.L.P., Cedar Rapids, for appellees.

Heard by SACKETT, P.J., CADY, J., and PERKINS, Senior Judge.*

CADY, Judge.

Service Unlimited, Inc. appeals certain provisions of a district court's judgment dealing with their mechanic's lien foreclosure action and Ronald and Edith Elder's counterclaim for breach of contract. We affirm the district court's decision.

Service Unlimited, Inc., is a business in Quasqueton, Iowa operating as a general contractor. In 1990, it entered into a contract with Ronald and Edith Elder to perform remodeling work on a building owned by the Elders. The first floor of the building was to be used as a business and the second floor was to be used as the Elders' residence. The contract price was $78,977, and included a provision requiring Service to provide "approximately 2800 square feet" of concrete for "the main floor" and to insulate the ceiling to the R–40 level. The Elders claim the concrete on the main floor included the concrete approaches outside of the building. While remodeling Service only used insulation to a level of R–19, which required the Elders to install a larger air conditioner with additional cooling costs. The Elders still complained about inadequate air conditioning and heating on the second floor.

The Elders paid Service over $63,000 under the contract, but refused to make a final payment because the work had not been finished and the amount sought was incorrect. Service subsequently filed a mechanic's lien which the Elders claimed was based on bills never presented to them. Service sought $1364 for the concrete approaches as extra work. The Elders claimed they had put $130,000 into purchasing and remodeling the building but the market value was only around $60,000. In addition, evidence indicated it would cost $10,800 to bring the insulation to the R–40 level.

Service subsequently filed a petition seeking to foreclose on the mechanic's lien. The Elders filed a counterclaim raising breach-of-contract and negligence claims for the alleged failure of Service to perform the contractual work in a workmanlike manner.

After a bench trial, the district court entered judgment determining Service was entitled to recover the unpaid contract balance and the fair and reasonable value of certain extras furnished minus a set off to the Elders for certain credits and for work improperly performed. The court found the contract included the concrete approaches under the provision providing concrete for the main floor. The court further determined the Elders were entitled to a credit for the installation of a properly insulated roof and awarded the Elders $7179.18 plus interest. The court also found Service was not entitled to recover on its mechanic's lien since the sums owed the Elders exceeded the amount they owed Service.

Service appealed. They claim the trial court erred in concluding the exterior concrete approaches around the building did not constitute extra work. They also claim the trial court erred in computing damages for the inadequate insulation by using "cost of repair" instead of "reduction in value."

## I. Standard of Review

■ An action to enforce a mechanic's lien is in equity. Iowa Code § 572.26 (1993). We therefore review the denial of a claim for extra work in an action to enforce a mechanic's lien de novo. *See Overhead Door Co. of Des Moines, Inc. v. Sharkey,* 395 N.W.2d 186, 187 (Iowa App.1986). The findings of the trial court are given weight, but are not binding. *Id.* A claim for damages arising from the construction of a building, on the other hand, is reviewed for error of law. *See Busker v. Sokolowski,* 203 N.W.2d 301, 302 (Iowa 1972). The findings of the trial court are binding on us if supported by substantial evidence. *Id.*

## II. Claim for Extra Work

■ Generally, a builder may recover for extra work performed on a construction project when ordered and agreed to by the parties and not covered by the building contract. *Nepstad Custom Homes Co. v. Krull,* 527 N.W.2d 402, 407 (Iowa App.1994). A claim for extra work must fail, however, when the work was covered by the terms of the contract. 13 Am.Jur.2d, *Building and Construction Contracts,* § 19 (1964).

■ We agree with the trial court the written contract covered the exterior concrete slabs. The phrase "main floor" as used in the contract was susceptible to two different meanings and is ambiguous. *See Berryhill v. Hatt,* 428 N.W.2d 647, 654 (Iowa 1988) (ambiguity exists in contract when, after application of rules of interpretation to face of instrument, a genuine uncertainty exists concerning which of two reasonable construction is proper). The phrase "main floor" refers to either the internal dimensions of the floor solely or to both the interior and exterior dimensions. Therefore, the circumstances surrounding the contract and the interpretation given by the parties may be considered. *Kroblin v. RDR Motels, Inc.,* 347 N.W.2d 430, 433 (Iowa 1984).

■ In this case, the contract called for "approximately 2,800 square feet" of concrete for the "main floor." The main floor of the building, including the exterior approach, measured approximately 2,800 square feet. The interior dimensions equaled 2,584 square feet and the exterior approach around the building was an additional 200 square feet. Thus, the total square feet of concrete required to be supplied under the contract was compatible with the inclusion of the exterior approach. Furthermore, Service did not include a charge for extra concrete work in its final bill to the Elders. The Elders first learned of the extra charge when the mechanic's lien was filed. Discussions between Service and the Elders were also consistent with the inclusion of the exterior approach in the original contract price.

## III. Measure of Damages

■ Damages in defective construction cases may include diminution in value, cost of construction or completion as required under the contract, or loss of rentals. *R.E.T. Corp. v. Frank Paxton Co., Inc.,* 329 N.W.2d 416,

421 (Iowa 1983). As a general rule, the cost of correcting the defects or completing the omissions is the proper measure. *Busker v. Sokolowski*, 203 N.W.2d at 304. Costs are limited, however, by the concept of economic waste. *Id.* If the defects can be corrected only at a cost grossly disproportionate to the result or benefit obtained by the owner, or if correcting the defect would involve unreasonable destruction of the builder's work, the proper measure of damage is the reduced value of the building. *Id.* The diminution in value is the difference between the value of the building if the contract had been fully performed and the value of the performance actually received. *See F.E. Marsh & Co. v. Light & Power Co. of St. Ansgar,* 196 Iowa 926, 195 N.W. 754 (1923).

In this case, the trial court utilized the "cost" rule in awarding damages to the Elders. Service claims the "reduction in value" rule should have been used because the cost of repair would constitute economic waste.

There was insufficient space between the ceiling and the roof to simply add an additional layer of insulation over the existing insulation. Therefore, the most feasible method of repair in compliance with the contract was to install a new insulated roof over the existing roof. The cost of this method of repair, reduced by the increased useful life of the new roof, was $9015.

On the other hand, the consequences of the reduced insulation increased the heating and cooling costs and required the Elders to install a larger air conditioner. The increased cost of a larger air conditioner was $256, and the additional annual operating costs were approximately $94. Service used this evidence to argue the costs of repair, as a matter of law, were grossly disproportionate to the actual benefit obtained.

We acknowledge the cost of repair is disproportionate to the additional heating and cooling costs. However, the Elders testified the heating and cooling problems continued after the larger air conditioner was installed. They are still unable to maintain the second level at a comfortable temperature in the summer and winter months. The poor insulation has decreased the comfort of their residence area. Mr. Elder also testified the lack of insulation contributed to a substantial reduction in the value of the building.

In light of this evidence, we cannot conclude the trial court erred in using the "cost" rule to determine damages. We find substantial evidence the cost of repair was not grossly disproportionate to the benefits obtained. We find no legal error.

**AFFIRMED.**