United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

96-2140NISC

| | |
|---|---|
| Terra International, Inc., A Delaware Corporation,, | * |
| | * |
| | * Appeal from the United |
| Appellant, | * States |
| | * District Court for the |
| v. | * Northern District of Iowa |
| | * |
| Mississippi Chemical Corporation, A Mississippi Corporation,, | * |
| | * |
| | * |
| | * |
| Appellee. | |

On the court's own motion, the judgment of May 16, 1997, is vacated, and the opinion filed on that date is withdrawn. The attached opinion is filed in its stead.

July 11, 1997

Order entered at the direction of the Court:

Clerk, U.S. Court of Appeals, Eighth Circuit.

# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 96-2140

_____

TERRA INTERNATIONAL, INC.,   \*
A Delaware Corporation,   \*
  \*
   Plaintiff - Appellant,   \*
  \*   Appeal from the United States
v.   \*   District Court for the
  \*   Northern District of Iowa.
MISSISSIPPI CHEMICAL   \*
CORPORATION,   \*
A Mississippi Corporation,   \*
  \*
   Defendant - Appellee.   \*

_____

Submitted:  September 9, 1996

Filed:  July 11, 1997

_____

Before WOLLMAN, Circuit Judge, HENLEY, Senior Circuit Judge, and
   HANSEN, Circuit Judge.

_____

HANSEN, Circuit Judge.

Terra International, Inc., (Terra) appeals the district court's[1] order granting Mississippi Chemical Corporation's (MCC) motion to transfer this lawsuit to the United States District Court for the Southern District of Mississippi and denying Terra's motion to enjoin permanently MCC from proceeding in its own lawsuit subsequently filed in the Mississippi court. Terra Int'l, Inc. v. Mississippi Chem. Corp., 922 F. Supp. 1334 (N.D. Iowa 1996). Terra filed its complaint in the Northern District of Iowa, alleging that MCC's design of its ammonium nitrate neutralizer technology, which MCC licensed to Terra, was defective and caused an explosion at Terra's plant. Relying primarily on the forum selection clause contained in the license agreement, the district court granted MCC's motion to transfer under 28 U.S.C. § 1404(a) (1994). For the reasons outlined below, we affirm.

I.

Terra International, Inc., manufactures and distributes a variety of agricultural products including nitrogen-based fertilizers. Terra's principal place of business is in Sioux City, Iowa. Mississippi Chemical Corporation also engages in the production of fertilizers and is the largest manufacturer of ammonium nitrate fertilizer in the United States. MCC's principal place of business is in Yazoo City, Mississippi.

In the late 1970s, MCC developed an improved ammonium neutralization process and designed a new version of an apparatus called a "neutralizer" which, working together, reduced the ammonium nitrate emissions into the environment and increased the efficiency of the ammonium nitrate manufacturing process. MCC decided to make its neutralizer technology available to the rest of the fertilizer industry by licensing its technology to other fertilizer producers. On April 28, 1980, MCC and Terra entered into a license agreement under which Terra agreed to pay MCC $40,000

_____

[1]The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa.

to use MCC's neutralizer technology at Terra's manufacturing facility in Port Neal, Iowa.[2]  The license agreement required MCC to provide Terra with the blueprints to its neutralizer, to review Terra's proposed design of a neutralizer, and to provide training and start-up engineering assistance to Terra.[3]

One section of the license agreement, entitled "Laws and Suits," contained a forum selection clause.  The entire paragraph reads as follows:

> This agreement will be construed in accordance with the laws of the State of Mississippi.  <u>Any dispute or disputes arising between the parties hereunder</u>, insofar as the same cannot be settled by friendly agreement, <u>will be determined in the District Court of the United States for the Southern District of Mississippi</u> and, for the purpose of instituting such suit, [Terra] hereby consents to service in connection therewith through the Secretary of State for the State of Mississippi.

(Appellant's App. at A261 (emphasis added).)  The emphasized portion of the above paragraph is the forum selection clause at issue in this case, the meaning of which is highly contested.

On December 13, 1994, 14 years after Terra and MCC entered into the license agreement, an explosion occurred at Terra's Port Neal factory.  The explosion killed 4 people, injured 18 others, and leveled the facility's ammonium nitrate plant.

On August 31, 1995, Terra filed a lawsuit against MCC in the United States District Court for the Northern District of Iowa, Western Division, located in Sioux

---

[2]MCC's technology is currently used at 22 other ammonium nitrate manufacturing facilities.

[3]MCC does not actually manufacture neutralizers but merely licenses its neutralizer design to its licensees.

City. In its complaint, Terra limited its cause of action to two tort claims. The first count alleged that MCC negligently designed its neutralizer technology and failed to train and properly warn Terra employees regarding the technology. The second count asserted that MCC's neutralizer technology was unreasonably dangerous and defective and thus alleged that MCC should be held strictly liable for the damages caused by the explosion. Terra did not assert any parallel claims for breach of contract. On the same day, a few hours later, MCC filed a lawsuit against Terra in the United States District Court for the Southern District of Mississippi, located in Jackson. In its complaint, MCC sought a declaratory judgment that it was not liable in any way for the explosion at Terra's Port Neal facility and asserted a defamation claim against Terra.[4]

In December 1995, MCC filed a motion to transfer the Iowa case to Mississippi pursuant to 28 U.S.C. § 1404(a), while Terra filed a motion for a permanent injunction asking the federal court in Iowa to prevent MCC from prosecuting MCC's lawsuit in Mississippi.[5] After considering many of the relevant factors under section 1404(a), the Iowa court determined that neither the "convenience" factors nor the "interest of justice" factors decidedly weighed in favor of either Iowa or Mississippi. Terra Int'l Inc., 922 F. Supp. at 1356-64. The court then analyzed the forum selection clause contained in the 1980 license agreement and concluded that the clause unambiguously required Terra's tort claims to be litigated in the Mississippi federal court. Id. at 1382.

---

[4]MCC based its defamation claim on several public statements made by Terra officials in which they asserted that MCC's defectively designed neutralizer caused the explosion.

[5]Terra also filed its own motion to transfer in the federal district court in Mississippi, asking the Mississippi court to transfer MCC's lawsuit to Iowa. In an unreported decision, the federal magistrate judge denied Terra's motion to transfer, finding that the forum selection clause unambiguously required these disputes to be litigated in Mississippi. Mississippi Chem. Corp. v. Terra Int'l Inc., 1996 WL 293764, at *7 (S.D. Miss. 1996). The magistrate judge's decision was affirmed by the district judge on appeal.

The court thus granted MCC's motion to transfer Terra's lawsuit to Mississippi and correspondingly denied Terra's motion for a permanent injunction. Terra challenges the conclusions of the Iowa federal court.

## II.

Section 1404(a) governs the ability of a federal district court to transfer a case to another district. This provision reads: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (1994). The statutory language reveals three general categories of factors that courts must consider when deciding a motion to transfer: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. Id. Courts have not, however, limited a district court's evaluation of a transfer motion to these enumerated factors. Instead, courts have recognized that such determinations require a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors. See Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995); 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3847, at 370 (2d ed. 1986). As the Supreme Court explained, "[a] motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors." Stewart, 487 U.S. at 29. Although there is no exhaustive list of specific factors to consider, courts have determined that a valid and applicable forum selection clause in a contract is "a significant factor that figures centrally in the district court's calculus." Id. On appeal, Terra argues that the district court incorrectly found the forum selection clause applicable to its tort claims and improperly weighed the other section 1404(a) factors.

Although the parties agree that we review a district court's decision regarding a section 1404(a) transfer motion for an abuse of discretion, see Stewart, 487 U.S. at 29;

5

Everett v. St. Ansgar Hosp., 974 F.2d 77, 79 (8th Cir. 1992), they disagree over the appropriate standard of review regarding a district court's construction of a forum selection clause. Terra argues that we should review the court's interpretation of the forum selection clause de novo, because such an interpretation is equivalent to the construction of a contract which is a legal issue. MCC, however, asserts that in weighing the relevant section 1404(a) factors, the district court was not required to interpret the specific meaning of the forum selection clause but merely recognize its presence and factor it into the equation. Consequently, MCC believes that the abuse of discretion standard, which applies to the district court's overall balancing of various factors, also applies to the court's specific treatment of the forum selection clause.

In Sun World Lines v. March Shipping Corp., 801 F.2d 1066, 1068 n.3 (8th Cir. 1986), this court, following the Ninth Circuit's approach, reviewed for an abuse of discretion a district court's "enforcement" of a forum selection clause. The dispute in Sun World, however, concerned the validity of the forum selection clause. Id. at 1067. In the case at hand, neither party challenges the validity of the forum selection clause; rather, they contest the specific meaning of the language used in the forum selection clause, which was not an issue in Sun World. The Ninth Circuit itself has refined its approach and has explained that it employs de novo review when a district court is required to interpret the language of a forum selection clause. Northern. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co., 69 F.3d 1034, 1036 n.3 (9th Cir. 1995).

Here, interpreting the language of the forum selection clause is necessary to the section 1404(a) transfer analysis. Before a district court can even consider a forum selection clause in its transfer analysis, it first must decide whether the clause applies to the type of claims asserted in the lawsuit. Following the Ninth Circuit's approach, as well as our own standard of review in cases of contract interpretation, see United States v. Brekke, 97 F.3d 1043, 1049 (8th Cir. 1996) (applying de novo review to district court's construction of a contract), we conclude that de novo review is the

appropriate standard for reviewing a district court's interpretation of the specific terms contained in a forum selection clause.  See Jumara, 55 F.3d at 880-81; Hugel v. Corporation of Lloyd's, 999 F.2d 206, 207 (7th Cir. 1993); Milk `N' More, Inc. v. Beavert, 963 F.2d 1342, 1345 (10th Cir. 1992).

## A.

Terra claims that the forum selection clause in the license agreement does not apply to its tort claims and therefore should not receive any consideration in the transfer analysis under section 1404(a).  To reiterate, the forum selection clause provides, "Any dispute or disputes arising between the parties hereunder, insofar as the same cannot be settled by friendly agreement, will be determined in the District Court of the United States for the Southern District of Mississippi . . . ." (Appellant's App. at A261.)  Terra contends that the word "hereunder" modifies the word "arising" instead of the word "parties," indicating that the clause applies only to claims arising under the license agreement.  Terra asserts that its tort claims do not arise under the agreement but are independent of it.  The district court rejected Terra's interpretation and emphasized that the placement of "hereunder" directly after "parties" unambiguously indicates that "hereunder" modifies "parties."  Terra, 922 F. Supp. at 1376.  Thus, the court concluded that the forum selection clause unambiguously applies to any disputes arising between the parties.[6]  Id. at 1375-76.

---

[6]Recognizing that its interpretation of the forum selection clause was very broad, the district court attempted to confine the breadth of the clause not by its own terms, but by policy considerations that indicate that it would be unreasonable to apply a broad forum selection clause contained in a contract to a lawsuit that is completely unrelated to the subject of the contract.  Consequently, the district court imposed the requirement that the claims at issue between the parties must be sufficiently related to the contract in order for the forum selection clause to apply.  See Terra, 922 F. Supp. at 1376.

After analyzing the language of the clause and reviewing the arguments of the parties, we conclude that the forum selection clause is reasonably susceptible to both interpretations. The placement of "hereunder" directly after the word "parties" could reasonably suggest that it modifies "parties," which would give the clause a very broad scope covering any disputes arising between the parties. We also find Terra's interpretation reasonable, because we are persuaded that, at least in this contractual context, "hereunder" typically signifies "under the agreement," while "hereto" most often refers to the parties to the agreement. Thus, we find that the clause is ambiguous. See Wilson v. Prudential Ins. Co. Am., 97 F.3d 1010, 1013 (8th Cir. 1996); Service Unlimited, Inc. v. Elder, 542 N.W.2d 855, 857 (Iowa Ct. App. 1995); Texaco, Inc. v. Kennedy, 271 So. 2d 450, 452 (Miss. 1973).

Terra urges us to construe the ambiguous clause against its drafter--MCC. We decline to apply the doctrine of contra proferentem to this case due to the relatively equal bargaining strengths of both parties and the fact that Terra was represented by sophisticated legal counsel during the formation of the license agreement. See Data Gen. Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1166 n.33 (1st Cir. 1994). We are convinced, however, that Terra's more narrow interpretation of the forum selection clause (i.e., "hereunder" modifies "arising" not "parties") is more compelling. First, construing the license agreement as a whole, see, e.g., Krupnick v. Ray, 61 F.3d 662, 664 (8th Cir. 1995); Lange v. Lange, 520 N.W.2d 113, 119 (Iowa 1994); Brown v. Hartford Ins. Co., 606 So. 2d 122, 126 (Miss. 1992), the parties uniformly use the word "hereunder" in several other portions of the license agreement to mean "under this Agreement," while they use the word "hereto" to refer to the parties to the Agreement.[7]

---

[7]See, e.g., License Agreement, ¶ 10 ("[n]either party hereto will assign any of its rights or obligations hereunder to any person, firm, corporation or organization not a party to this Agreement without the prior written consent of the other party.") (Appellant's App. at A261 (emphasis added)); License Agreement, ¶ 12(b) ("The headings contained in this Agreement are used solely for convenience and do not constitute a part of the Agreement between the parties hereto.") (Id. (emphasis added)).

8

Second, the forum selection clauses contained in MCC's license agreements with other parties indicate that MCC knew how to draft an explicitly broad clause when it wanted to but did not do so here.[8] One such clause reads, "Should any dispute or difference of any kind whatsoever arise between MCC and [redacted party] in connection with or arising out of this Agreement. . . ." (Appellant's App. at A264.) Moreover, these other clauses were drafted many years before this litigation arose which indicates that MCC was aware of the significance of the particular wording of these clauses at the time it drafted them. Consequently, we believe that the parties intended the forum selection clause in this case to apply only to disputes arising under the license agreement. This conclusion, however, only leads us to our next question-- whether Terra's tort claims actually arise under the license agreement.

"Whether tort claims are to be governed by forum selection provisions depends upon the intention of the parties reflected in the wording of particular clauses and the facts of each case." Berrett v. Life Ins. Co. of the Southwest, 623 F. Supp. 946, 948-49 (D. Utah 1985). An analysis of the specific language of the forum selection clause in this case does not clearly indicate whether the clause applies to Terra's tort claims. As we have construed it, the clause requires any disputes arising under the license agreement to be determined in Mississippi. Terra asserts that its negligence and strict liability claims do not arise under the agreement because they are based on MCC's breach of common law tort duties that are independent of any duty arising from the license agreement, and they do not require a particular construction of the agreement's terms. MCC, on the other hand, contends that Terra's tort claims target the specific subject matter of the license agreement, the neutralizer technology, and explains that without the license agreement, Terra never would have received the technology.

---

[8]Having found the clause ambiguous, we appropriately consider extrinsic evidence to interpret this contract provision. See Marren v. Mutual Life Ins. Co. of New York, 84 F.3d 1068, 1070 (8th Cir. 1996); Uhl v. City of Sioux City, 490 N.W.2d 69, 73 (Iowa Ct. App. 1992); Farragut v. Massey, 612 So. 2d 325, 329 (Miss. 1992).

Although the cases deciding whether very similarly-worded forum selection clauses cover tort claims have reached different conclusions, the majority of these cases suggests that such clauses do apply to tort claims. In <u>Banco Popular de Puerto Rico v. Airborne Group PLC</u>, 882 F. Supp. 1212 (D.P.R. 1995), the parties entered into a sales agreement for the sale of a blimp. The agreement contained a forum selection clause which provided that "disputes hereunder or as to the construction of this Agreement shall be resolved in the Courts of England." <u>Id.</u> at 1213. The court determined that, in addition to his breach of contract claims, this clause encompassed all of the plaintiff's tort claims which included claims for negligent manufacture and maintenance of the blimp. <u>Id.</u> at 1214, 1217. Additionally, another court determined that a forum selection provision which read, "In the event of any litigation commenced by either party hereunder, such action shall be commenced in New York," covered tort claims based on fraud and deceit. <u>Picken v. Minuteman Press Int'l, Inc.</u>, 854 F. Supp. 909 (N.D. Ga. 1993). In discussing the clause, which is remarkably similar to the one presently at issue, the court explained that "Reading the word `hereunder' to apply only to a pure breach of contract claim between the parties would be unduly crabbed and narrow. `Hereunder' refers to the relations that have arisen as a result of this contract." <u>Id.</u> at 911; <u>see also</u>, <u>Warnaco Inc. v. VF Corp.</u>, 844 F. Supp. 940, 947-49 (S.D.N.Y. 1994) (finding tort claims covered by forum selection clause reading, "Any dispute or issue arising hereunder . . . ."); <u>Nat'l Micrographics Sys., Inc. v. Canon U.S.A., Inc.</u>, 825 F. Supp. 671, 677-78 (D.N.J. 1993) (finding forum selection provision reading "any and all causes of action hereunder by and between the parties hereto" covered claims for tortious interference); <u>but see</u>, <u>Hoffman v. Minuteman Press Int'l. Inc.</u>, 747 F. Supp. 552, 559 (W.D. Mo. 1990) (holding that tort claim for fraudulent inducement was not covered by forum selection clause reading "any litigation commenced by either party hereunder"); <u>Berrett</u>, 623 F. Supp. at 947, 949 (finding that forum selection clause which read "parties agree that any action at law or in equity hereunder" did not apply to several business-related tort claims). These cases indicate that forum selection clauses referring to claims "hereunder" or "under the agreement" can be broad enough to cover contract-related tort claims.

10

Although determining the scope of a forum selection clause is a rather case-specific exercise, several courts have offered further guidance on this issue and have articulated variously phrased general rules regarding the circumstances in which a forum selection clause will apply to tort claims. The Third Circuit has indicated that where tort claims "ultimately depend on the existence of a contractual relationship" between the parties, such claims are covered by a contractually-based forum selection clause. Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 203 (3d Cir.), cert. denied, 464 U.S. 938 (1983). In Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 514 (9th Cir. 1988), the Ninth Circuit stated that "[w]hether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract." The First Circuit has phrased its test slightly differently, explaining that "contract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties." Lambert v. Kysar, 983 F.2d 1110, 1121-22 (1st Cir. 1993). The district court in the present case referred to these cases, but relied chiefly on this court's decision in Farmland Indus., Inc. v. Frazier-Parrott Commodities, Inc., 806 F.2d 848, 852 (8th Cir. 1986), abrogated on other grounds by Lauro Lines v. Chasser et al., 490 U.S. 495 (1989), for the general proposition that forum selection clauses cover tort claims that are directly or indirectly related to the parties' contractual relationship. See Terra, 922 F. Supp. at 1379-80. While the three previous cases do speak in general terms, our review of the Farmland decision leads us to conclude that the case does not stand for such a general proposition. Instead, the decision is limited to its facts, because the "directly" or "indirectly" language was contained in the specific forum selection clause at issue in that case. See Farmland, 806 F.2d at 849, 852. Consequently, our consideration is limited to the first three generally applicable tests.

The first two guiding principles are not very instructive when applied to the facts of this case. At first glance it appears that Terra's tort claims would not be covered by the forum selection clause under the Ninth Circuit's test because the resolution of these products liability claims does not seem to relate to or require the interpretation of the

11

license agreement. Nevertheless, while these tort claims do not center around a disagreement over the specific terms of the license agreement, one could argue that they "relate" to the agreement's interpretation because the tort claims directly involve the entire subject matter of the license agreement. The Third Circuit's rule is also inconclusive in this case. MCC asserts that Terra's tort claims do ultimately depend on the existence of a contractual relationship because without the license agreement, MCC would not have provided Terra with its neutralizer technology. Terra, however, argues forcefully that its tort claims are based on MCC's alleged breach of its common law tort duties which are independent of the contract.

The First Circuit's approach is more revealing in this case, and we believe that it merits application to the circumstances before us. We think it is clear that Terra's tort claims involve the same operative facts as would a parallel claim for breach of contract. Admittedly, Terra did not raise any claims for breach of contract in its complaint. Strategic or artfully drawn pleadings, however, will not work to circumvent an otherwise applicable forum selection clause. See Lambert, 983 F.2d at 1121; Coastal Steel, 709 F.2d at 203. Although we recognize that Terra's claims are alleged as tort claims, Terra plainly could have asserted a parallel claim for breach of contract in the same complaint. The fact that MCC's technology allegedly caused an explosion that actively inflicted damage does not transform Terra's cause of action into one based exclusively in tort. The same exact facts surrounding Terra's tort claims would also give rise to a breach of contract claim. Therefore, according to the rationale of the First Circuit's rule in Lambert, we believe that the forum selection clause applies to Terra's tort claims.

Several other considerations also persuade us that the forum selection clause covers Terra's tort claims. After finalizing the license agreement, we believe that both parties could have anticipated that tort claims such as Terra now brings would be litigated in Mississippi. Paragraph 2(b) of the license agreement provides that MCC will reimburse Terra for costs or damages resulting from "any defect in the design of

12

[Terra's] neutralizer . . . which can be shown to result from errors in the information contained in the Design Manual."  (Appellant's App. at A255.)  Although Terra contends that this provision is very limited in scope, it expressly envisions that future claims of defective design may arise between the parties.  Moreover, Terra's own complaint repeatedly refers to the specific promises that MCC made under the license agreement.  (Id. at A18.)  These facts support our conclusion that Terra's tort claims arise under the license agreement, and therefore, the forum selection clause applies to Terra's claims.[9]

B.

Our conclusion that the scope of the forum selection clause covers Terra's tort claims does not end our analysis, however.  As mentioned earlier, the significance of the forum selection clause in this case arises in the context of a motion to transfer under section 1404(a).  The fact that we have found the clause applicable merely allows us to consider it as one factor, albeit a very important one, in the overall transfer analysis.  Terra posits the alternative argument that even if the forum selection clause applies, the other relevant factors, especially the convenience of the witnesses, weigh decidedly in favor of the Iowa forum and sufficiently outweigh the significance of the forum selection clause.  Terra argues that the district court abused its discretion in evaluating these additional factors and in concluding that they do not weigh in favor of either Iowa or Mississippi, thus giving the forum selection clause dispositive effect in this case.

---

[9]Our references to portions of the License Agreement that refer to possible design defects merely bolster our belief that the forum selection clause applies to Terra's common law tort claims.  We express no views regarding the applicability of any other provision (including any provision for the limitation of liability or damages) of the License Agreement to Terra's tort claims.

Terra alleges that the district court abused its discretion in conducting the general section 1404(a) transfer analysis. Initially, Terra argues that the district court improperly shifted the burden of persuasion from MCC to Terra. In general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted. See Jumara, 55 F.3d at 879; Scheidt v. Klein, 956 F.2d 963, 965 (10th Cir. 1992). Some courts, however, have held that the existence of a forum selection clause that dictates that a lawsuit should be transferred to another court shifts the burden to the party opposing the transfer motion. See Jumara, 55 F.3d at 880; In Re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989).[10] Terra disagrees with the holdings in these cases and alleges that the district court abused its discretion by shifting the burden to Terra. The district court did in fact believe that the burden was on Terra to demonstrate why the forum selection clause should not be enforced. Terra, 922 F. Supp. at 1370. Nevertheless, the district court also stated that "even if the burden remained with MCC, MCC met that burden." Id. at 1382 n.33. We agree with the district court's conclusion that MCC fulfilled any potential burden it had to prove that a transfer was warranted by establishing that the other section 1404(a) factors (discussed below) did not overcome the significance of the forum selection clause. Because we agree with the district court's alternative conclusion that MCC fulfilled its potential burden, we decline to rule on the issue of whether a forum selection clause shifts the burden of proof to the party resisting the clause's enforcement and merely conclude that the district court did not abuse its discretion on this issue.

---

[10]In The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1971), the Supreme Court also suggests that the burden shifts to the party resisting the application of a forum selection clause to demonstrate that enforcement of the clause would be unreasonable. The breadth of this holding, however, is unclear due to the fact that the Court subsequently states that "this is the correct doctrine to be followed by federal district courts sitting in admiralty." Id.

Terra next contends that the district court improperly analyzed the section 1404(a) factors by focusing on whether the inconvenience of litigating in Mississippi could be mitigated instead of determining, on balance, which forum would be the most convenient. Terra primarily challenges the district court's conclusion that the other relevant factors did not weigh decidedly in favor of the Iowa forum. After reviewing the district court's reasoning, we find that the district court did not abuse its discretion in weighing the factors relevant to a motion to transfer under section 1404(a).

As mentioned earlier, a transfer motion requires the court to consider the convenience of the parties, the convenience of the witnesses, the interests of justice, and any other relevant factors when comparing alternative venues. See 28 U.S.C. § 1404(a); 15 Wright, Miller, and Cooper, supra, § 3847. A review of the district court's opinion reveals that the court meticulously analyzed the numerous criteria that courts traditionally consider when deciding a motion to transfer. Under the general category titled "Balance of Convenience" the district court considered (1) the convenience of the parties, (2) the convenience of the witnesses--including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law. Terra, 922 F. Supp. at 1357-61. Under the category titled "Interest of Justice" the court also considered (1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law. Id. at 1361-63. These considerations parallel the factors that courts typically analyze under section 1404(a). See, e.g., Jumara, 55 F.3d at 879-80; Chrysler Credit Corp. v. County Chrysler, Inc., 928 F.2d 1509, 1516 (10th Cir. 1991) (quoting Texas Gulf Sulphur Co. v. Ritter, 371 F.2d 145, 147 (10th Cir. 1967)).

15

Although Terra concedes that the district court considered the appropriate factors, Terra focuses its attack primarily on the district court's analysis regarding the convenience of the witnesses. Terra argues that this factor is significant and weighs heavily in favor of the Iowa forum. Terra explains that a clear majority of nonparty witnesses resides in Iowa, that Terra would not be able to compel these witnesses to testify in Mississippi, and that videotaped depositions are a poor substitute for live testimony. While these assertions may be true, we agree with the district court's conclusion that "sheer numbers of witnesses will not decide which way the convenience factor tips." Terra, 922 F. Supp. at 1360. Moreover, similar inconveniences would fall on MCC if it were required to litigate in Iowa. "Merely shifting the inconvenience from one side to the other, however, obviously is not a permissible justification for a change of venue." Scheidt, 956 F.2d at 966.

To Terra's credit, we admittedly are quite skeptical of the district court's conclusion that the balance of convenience was flat. Even if we tend to believe that the convenience factors weigh in favor of an Iowa forum, however, we cannot say that they so overwhelmingly favor Iowa as to outweigh the significance of the agreed-upon forum selection clause and moreover, to such a degree that the district court abused its discretion in concluding that a transfer was warranted.[11] To reiterate, a forum selection clause is "a significant factor that figures centrally in the district court's calculus" in a motion to transfer, Stewart, 487 U.S. at 29, and section 1404(a) accords the district court much discretion in deciding such motions. See id.; Norwood v. Kirkpatrick, 349 U.S. 29, 32 (1955). We have carefully reviewed the record, and while we may have reached a different decision were we the district court, we conclude that the district court did not abuse its discretion in deciding to transfer this lawsuit to Mississippi.

---

[11]The district court in Mississippi reached this very conclusion. Unlike the Iowa district court, the Mississippi court believed that the convenience factors favored Iowa but determined that the forum selection clause outweighed these considerations. See Mississippi Chem. Corp., 1996 WL 293764, *3.

III.

Consequently, we affirm the judgment of the district court.[12]  We deny as moot MCC's motion to supplement the record on appeal.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[12]In the district court, Terra initially argued that because it filed its lawsuit in Iowa a few hours before MCC filed its lawsuit in Mississippi, the first-filed rule dictates that this litigation should proceed in Iowa.  See United States Fire Ins. Co. v. Goodyear Tire & Rubber Co., 920 F.2d 487, 488 (8th Cir. 1990) (first-filed rule gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first established jurisdiction).  The district court concluded that the first-filed rule does not "trump" the transfer analysis and reasoned that when a transfer analysis  under section 1404(a) dictates that a case should be transferred, this constitutes a "compelling circumstance" that warrants an abrogation from the first-filed rule.  Terra, 922 F. Supp. 1350; see also Northwest Airlines v. American Airlines, 989 F.2d 1002, 1006 (8th Cir. 1993) (explaining "compelling circumstances" exception to first-filed rule).  Because the parties did not challenge this conclusion on appeal, we limit our review to the district court's section 1404(a) transfer analysis and need not further discuss the first-filed rule.