Heidy **HERSCHBACH**, individually and as co-trustee of the Herschbach Living Trust, and Susan L. Randall, as co-trustee of the Herschbach Living Trust, Plaintiffs,

v.

**Frederick J. HERSCHBACH and Herschbach Petroleum Company, Ltd., Defendants.**

**Case No. 1:09–cv–008.**

United States District Court, D. North Dakota, Southwestern Division.

Nov. 2, 2009.

Patrick W. Durick, Zachary E. Pelham, Pearce & Durick, Bismarck, ND, J. Kevin Raley, K. Ray Campbell, Mendel Law Firm, L.P., Houston, TX, for Plaintiffs.

Lawrence Bender, Timothy L. Kingstad, Fredrikson & Byron, PA, Bismarck, ND, Craig D. Zips, Derryberry & Zips, PLLC, Tyler, TX, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER VENUE

DANIEL L. HOVLAND, District Judge.

Before the Court is the Defendants' Motion to Transfer Venue filed on April 6, 2009. *See* Docket No. 6. The Plaintiffs filed a response in opposition to the motion on April 20, 2009. *See* Docket No. 10. The Defendants filed a reply brief on April 30, 2009. *See* Docket No. 14. Oral argument was held in Bismarck, North Dakota

on October 21, 2009. For the reasons set forth below, the motion is granted.

## I. *BACKGROUND*

Defendant Frederick Herschbach is a citizen of Texas and resident of Tyler, Texas. *See* Docket No. 1. Defendant Herschbach Petroleum Company, Ltd., is a Texas limited partnership with its principal place of business in Tyler, Texas. *Id.* Defendant Frederick Herschbach is the sole owner and partner of Herschbach Petroleum Company. Plaintiff Heidy Herschbach is a Washington citizen and the co-trustee of the Herschbach Living Trust. Plaintiff Susan Randall is a citizen of Washington and co-trustee of the Herschbach Living Trust. *Id.*

E. Fred Herschbach accumulated mineral interests in several states, including North Dakota and Texas. E. Fred Herschbach was married to Hazel Herschbach and they resided in Texas at all times relevant to the acquisition of the North Dakota minerals.[1] E. Fred Herschbach and Hazel Herschbach drafted their wills in Texas. *See* Docket Nos. 1, 6–2, 6–3. They had two sons, Robert Herschbach and Frederick Herschbach. E. Fred Herschbach died on December 26, 1969, and his last will and testament was admitted to probate in Smith County, Texas on January 12, 1970. Frederick Herschbach was appointed as the independent executor of the estate. *See* Docket No. 6–2. In E. Fred Herschbach's last will and testament, he "devised his share of the North Dakota Minerals, except for the income derived therefrom, to Frederick J. Herschbach and devised all income from his share of the North Dakota Minerals to Hazel P. Herschbach and Frederick J. Herschbach as trustees of a trust of which they were the only beneficiaries. The terms of the trust created by the will specified that the trust would terminate upon the death of Hazel P. Herschbach." *See* Docket No. 1. Neither E. Fred Herschbach's last will and testament nor any instrument conveying his property was ever filed in the North Dakota counties where the minerals in dispute are located until 2007. *See* Docket No. 1.

On April 1, 1971, Frederick Herschbach executed a document which assigned and conveyed to Robert Herschbach an undivided one-half (½) interest of all rights and properties acquired by Frederick Herschbach under the terms of E. Fred Herschbach's last will and testament. This instrument was never filed in the North Dakota counties where the minerals in dispute are located. Robert Herschbach died on July 12, 1985, leaving a last will and testament that devised all of his property to his wife, Heidy Herschbach. *See* Docket No. 10–1. Robert Herschbach's last will and testament was never filed in North Dakota. Hazel Herschbach died on September 27, 1985, leaving a last will and testament that devised all of her property to her sons, Robert Herschbach and Frederick Herschbach, equally. *See* Docket No. 6–3.

Hazel Herschbach's last will and testament was admitted to probate in Smith County, Texas on October 15, 1985. *See* Docket No. 6–1. The material portions of Hazel Herschbach's will are found in Article Three which reads as follows:

> If my son, Frederick J. Herschbach, survives me, then I give, devise and bequeath all of my property, real and personal, equally, to my sons, Frederick J. Herschbach and Robert A. Herschbach; provided, that if Robert A. Herschbach predeceases me, then his

---

1. Record title to the North Dakota minerals appears to be in the name of E. Fred Herschbach.

share shall pass to his devisees or his then living heirs if he should die without a Will.

If my son, Frederick J. Herschbach, predeceases me, then I give, devise and bequeath all of my property, real and personal, as follows:

(A) The following property shall pass one-half (½) to my son, Robert A. Herschbach (or to his devisees or then living heirs if he predeceases me), and one-half (½) to the residuary beneficiary or beneficiaries named in the Will of my son, Frederick J. Herschbach (in the same proportions as therein provided) or to his then living heirs if he dies without a valid Will.

 (1) My interest in any home that I may be occupying at the time of my death, and the land upon which it is situated, together with all improvements, furniture, china, linens, silver, fixtures and contents therein and thereon contained;

 (2) My personal effects and any automobile which I may own at the time of my death;

 (3) Any and all earnings or profits which may have been accumulated in my estate in the interim between the death of my late husband, E. Frederick Herschbach, and my death.

(B) The rest, residue and remainder of my property shall pass as follows:

 (1) One-half (½) to my son, Robert A. Herschbach.

 (2) If the Trust created in the Will of my late husband, E. Fred Herschbach, dated September 18, 1969, and probated in Cause No. 14,930 in the County Court (Probate) of Smith County, Texas (herein called "Husband's Trust") is to continue after my death, then the remaining one-half (½) of the rest and residue of my property shall be held in trust until my Husband's Trust terminates in accordance with the following terms and conditions:

 (a) During the term of the Trust, an amount out of income (or out of principal to the extent income is insufficient) equal to (i) one-half (½) of the distributable amount of my Husband's Trust less (ii) the portion thereof distributed to Robert A. Herschbach, shall be paid to my son, Robert A. Herschbach (or to his devisees or then living heirs after his death). Any net income not so distributed shall be paid to the residuary beneficiary or beneficiaries named in the Will of my son, Frederick J. Herschbach (in the same proportions as therein provided) or to his then living heirs if he dies without a valid Will.

 (b) Upon the termination of my Husband's Trust, all of the remaining Trust Estate shall pass to the residuary beneficiary or beneficiaries named in the Will of my son, Frederick J. Herschbach (in the same proportions as therein provided) or to his then living heirs if he dies without a valid Will.

 (c) I hereby appoint First City National Bank of Tyler, Texas, as Trustees of such Trust. Such Trustee shall not be required to post any bond and shall be entitled to such fee as is customary in Smith County, Texas, for serving in such capacity.

 (3) If my Husband's Trust terminates at the time of my death, then one-half (½) of the rest, residue and remainder of my property shall pass to the residuary beneficiary or beneficiaries named in the Will of my son, Frederick J. Herschbach (in the same proportions as therein

provided) or to his then living heirs if he dies without a valid Will.

Notwithstanding the above provisions, if that certain Agreement ("Agreement") dated April 1, 1971, between my sons, Frederick J. Herschbach and Robert A. Herschbach, and myself, whereby, Frederick J. Herschbach assigned an undivided one-half (½) of all rights and property acquired by him under the terms of my late husband's Will to Robert A. Herschbach is held to be inoperative, ineffective or void for any reason, then to the extent my son, Robert A. Herschbach (or his devisees or heirs), receives less property, for whatever reason, than he would have had the Agreement had not been attached, then my son, Robert A. Herschbach (or his devisees or his then living heirs if he is deceased), shall receive an additional amount of my property equal to (i) the amount my son, Robert A. Herschbach, would have received had such Agreement been upheld plus (ii) all reasonable attorney's fees and court costs incurred by my son, Robert A. Herschbach (or his devisees or heirs), in defending the validity of such Agreement. Such additional devise shall be charged against the devisee under Article Three (B)(2) above (and, to the extent possible, charged against the person or persons benefitting by the attack of such Agreement).

*See* Docket No. 6–3.

On March 5, 2009, the Plaintiffs filed an action in federal district court in North Dakota, alleging that the Defendants knowingly made and/or attempted to make an unauthorized transfer of an interest in property, knowingly and falsely executed deeds that purported to transfer the interest in the North Dakota minerals, knowingly and falsely filed deeds of record in the counties where the North Dakota minerals are located, and converted the bonuses and royalties that were rightfully the property of the Plaintiffs.[2] The Plaintiffs allege that "Frederick J. Herschbach executed a number of instruments purporting to [fraudulently] convey individual parcels of the North Dakota Minerals from the Estate of E. Fred Herschbach to Frederick J. Herschbach and/or [the Herschbach Petroleum Company]." *See* Docket No. 1.

**2.** E. Fred Herschbach acquired mineral rights in several states, including North Dakota. The Plaintiffs allege that E. Fred Herschbach and Hazel Herschbach each owned an undivided one-half (½) interest in the North Dakota minerals because they were "community property under Texas law," even though the North Dakota minerals were held solely by E. Fred Herschbach. *See* Docket No. 1. The Plaintiffs allege that upon E. Fred Herschbach's death, he devised his one-half (½) interest in the minerals to Frederick Herschbach. Frederick Herschbach later executed a document which assigned and conveyed to Robert Herschbach an undivided one-half (½) of all rights and properties acquired by Frederick Herschbach under the terms of E. Fred Herschbach's last will and testament which amounts to a one-quarter (¼) interest in the minerals. *See* Docket No. 1. The Plaintiffs argue that upon Robert Herschbach's death, his one quarter (¼) interest in the North Dakota minerals was devised to Heidy Herschbach and/or the Herschbach Living Trust. The Plaintiffs allege that upon Hazel Herschbach's death, she devised her one-half (½) interest in the minerals as "community property" to Frederick Herschbach and Robert Herschbach equally. Since Robert Herschbach predeceased Hazel Herschbach, Robert Herschbach's interest in the minerals, devised to him from Hazel Herschbach, passed directly to Heidy Herschbach and/or the Herschbach Living Trust as Robert Herschbach's sole devisee. The Plaintiffs allege that as sole devisee of Robert Herschbach's last will and testament, Heidy Herschbach and/or the Herschbach Living Trust is the owner of one-quarter (¼) interest in the North Dakota minerals upon Robert Herschbach's death, as well as the owner of an additional one-quarter (¼) interest in the North Dakota minerals upon Hazel Herschbach's death, amounting to a one-half (½) interest in the North Dakota minerals. *See* Docket No. 1.

The Plaintiffs allege that "Frederick J. Herschbach executed the Fraudulent Conveyances knowing that Heidy Herschbach and/or the Herschbach Living Trust wer the rightful owners of a one-half interest in the North Dakota Minerals and with the specific intent to deprive Plaintiffs of the fruits of such interest." *See* Docket No. 1 (error in original). The Plaintiffs are seeking damages in excess of $1,000,000.00.

On March 6, 2009, Heidy Herschbach filed a virtually identical lawsuit against the Defendants in federal district court in the Eastern District of Texas, alleging the unauthorized transfer of mineral interests regarding the Texas minerals. *See* Docket No. 6. Plaintiff Susan Randall is not a party to the Texas action. *See* Docket No. 6–1. Both lawsuits stem from a dispute regarding the mineral interests owned in title by E. Fred Herschbach. At issue is whether the minerals were community property and, therefore, shared equally by E. Fred Herschbach and Hazel Herschbach. The major difference between the two cases is the location of the minerals in dispute.

On April 6, 2009, the Defendants filed a motion to transfer venue, seeking to transfer this action to the Eastern District of Texas. *See* Docket No. 6. The Defendants contend that a change of venue should be granted because venue in Texas is more convenient for potential witnesses, the parties, and counsel. The Defendants contend that the Plaintiffs anticipate traveling to Texas for a similar complaint that is pending in the Eastern District of Texas concerning the mineral interests in Texas. The Texas case involves the same parties and the wills of E. Fred Herschbach, Hazel Herschbach, and Robert Herschbach. The Defendants argue that with the lawsuits being nearly identical, a change of venue would promote judicial economy.

The Plaintiffs contend that North Dakota is a more convenient venue because the land containing the minerals in question is located in North Dakota. Although an identical lawsuit is pending in Texas between the same parties, the Plaintiffs argue that this fact is irrelevant.

## II. *JURISDICTION*

It is well-established that federal courts are courts of limited jurisdiction. Unlike state courts, federal courts have no "inherent" or "general" subject matter jurisdiction. Federal courts can only adjudicate those cases which the Constitution and Congress authorize them to adjudicate. Those types of cases generally involve diversity of citizenship (28 U.S.C. § 1332) or a federal question (28 U.S.C. § 1331). Pursuant to 28 U.S.C. § 1332, district courts have original jurisdiction of civil actions where the matter in controversy exceeds the sum of $75,000 and the parties are citizens of different states.

On March 5, 2009, the Plaintiffs filed an action in federal district court in North Dakota alleging the Defendants knowingly made and/or attempted to make an unauthorized transfer of an interest in property, knowingly and falsely executed the deeds that purported to transfer the interest in the North Dakota minerals, knowingly and falsely filed the deeds of record in the counties where the North Dakota minerals are located, and converted the bonuses and royalties that were rightfully the property of the Plaintiffs. On March 6, 2009, Heidy Herschbach filed an identical action in the Eastern District of Texas against the same Defendants concerning the wills of E. Fred Herschbach, Hazel Herschbach, and Robert Herschbach. *See* Docket No. 6–1. Heidy Herschbach and Susan Randall are citizens of Washington. Frederick Herschbach is a Texas resident and Herschbach Petroleum Company is a limited partnership organized and existing under the laws of Texas with its principal

place of business located in Tyler, Texas. The parties have complete diversity of citizenship. Therefore, the Court has diversity jurisdiction over the action.

### III. CHANGE OF VENUE

Pursuant to 28 U.S.C. § 1404(a), a federal district court may transfer a case to another district. When considering a motion to transfer venue, a court is statutorily required to balance three factors: (1) convenience of parties, (2) convenience of witnesses, and (3) the interests of justice. 28 U.S.C. § 1404(a). In keeping with the "flexible and multifaceted analysis that Congress intended to govern motions to transfer within the federal [court] system," *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988), evaluation of a transfer motion is not limited to these three factors, but instead, "such determinations require a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." *Terra Int'l, Inc. v. Mississippi Chemical Corp.*, 119 F.3d 688, 691 (8th Cir.1997).

 "[Section 1404(a) ] assumes that venue is proper in the court where the action is initially filed, and also that the court has jurisdiction over the person of the defendant." *Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196, 1201 (8th Cir. 1990). It is well-established that a change of venue, although within the discretion of the district court, should not be freely granted. Courts are in the business of deciding cases, not playing procedural hockey among available districts at the whim of dissatisfied parties. *In re Nine Mile Ltd.*, 692 F.2d 56, 61 (8th Cir.1982) *overruled on other grounds, Missouri Hous. Dev. Comm'n v. Brice*, 919 F.2d 1306, 1311 (8th Cir.1990). The moving party bears the heavy burden of showing that the balance of factors weighs in favor of a transfer. *Dakota W. Bank of North*

*Dakota v. N. Am. Nutrition Companies, Inc.*, 284 F.Supp.2d 1232, 1234 (D.N.D. 2003). "[T]he court is vested with discretion, in the interest of justice ... to [ ] transfer the case to a court where it could have been brought, or to retain the proceeding." *In re Eatherton*, 271 F.2d 199, 203 (8th Cir.1959). The Eastern District of Texas would have diversity jurisdiction over the action. Therefore, venue in the Easter District of Texas would also be proper.

### A. CONVENIENCE OF THE PARTIES

The Plaintiffs contend that convenience of the parties does not favor either side because the parties all live outside of North Dakota which requires them to travel for litigation. The Defendants argue that the case can fairly be decided in the Eastern District of Texas. The Defendants contend that the Plaintiffs' filing of an identical complaint in the Eastern District of Texas demonstrates that the Plaintiffs anticipate traveling to that forum. Therefore, both the actions pending in Texas and before this Court are between the same parties, concern the same basic facts, and the only difference is the location of the minerals.

 The Court must assess a "range of considerations, most notably the convenience of the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality" when assessing a transfer of venue. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 723, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). All of the parties reside outside of North Dakota. If venue remained in North Dakota, all of the parties would be forced to travel in order to litigate the ownership of the North Dakota mineral interests, whereas if venue were transferred to the Eastern District of Texas, only the Plaintiffs would

need to travel. Regardless of the venue, the Plaintiffs will need to travel out-of-state, making North Dakota no more convenient than Texas. A transfer of venue to the Eastern District of Texas would be more convenient for the Defendants because travel would not be required. The Defendants argue that the documents to be introduced at trial would be more accessible in Texas. The documents include business documents from the Herschbach Petroleum Company as well as various probate pleadings relating to the case filed in Texas. Documents can be easily transported. The location and numerosity of the documents to be introduced at trial bears little weight on the issue of venue.

If venue were transferred to the Eastern District of Texas, the actions could be consolidated into one dispute. The wills of E. Fred Herschbach and Hazel Herschbach were drafted and probated in Texas. The pending actions in Texas and North Dakota are virtually identical with the exception of the location of the disputed mineral interests. A change of venue would allow the parties to present their case only once. Accordingly, the Court finds that the Defendants have shown that the convenience factor weighs in favor of a transfer to Texas.

## B. *CONVENIENCE OF THE WITNESSES*

■■ "The factor generally given the most weight by courts considering a motion for change of venue is the convenience of the witnesses." *Pressdough of Bismarck, LLC v. A & W Restaurants, Inc.*, 587 F.Supp.2d 1079, 1086 (D.N.D.2008). In assessing this factor, the court considers the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony. *Terra Int'l*, 119 F.3d at 696. The Court "must examine the materiality and importance of the anticipated witnesses' testimony and then determine their accessibility and con-

venience to the forum." *Reid–Walen v. Hansen*, 933 F.2d 1390, 1396 (8th Cir. 1991).

The Plaintiffs have indicated that they "may" call county reporters and other government staff as witnesses from North Dakota. *See* Docket No. 10. The Defendants contend that several bookkeepers and/or office managers with knowledge of the facts are located in Tyler, Texas. The Court finds that the testimony of the fact witnesses, if needed, can be adequately addressed in written or video depositions, or through live video trial testimony. This factor does not favor either party.

## C. *INTERESTS OF JUSTICE*

■ In determining the interests of justice, courts may consider (1) judicial economy; (2) the plaintiff's choice of forum; (3) the comparative costs to the parties of litigating in each forum; (4) each party's ability to enforce a judgment; (5) obstacles to a fair trial; (6) conflict of law issues; and (7) the advantages of having a local court determine questions of local law. *Terra Int'l*, 119 F.3d at 696. 28 U.S.C. § 1404(a) is designed to prevent a waste of time, energy, and money, as well as ensure the protection of litigants, witnesses, and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964).

Allowing the actions pending in Texas and before this Court to be joined or consolidated will promote judicial economy and avoid duplicative litigation. Both actions stem from the wills of E. Fred Herschbach and Hazel Herschbach which were drafted and probated in the Eastern District of Texas. The Plaintiffs argue that even though title to the North Dakota minerals was held solely in E. Fred Herschbach's name, the minerals were community property under Texas law with

E. Fred Herschbach owning a one-half (½) interest and Hazel Herschbach owning a one-half (½) interest. The Plaintiffs argue that upon E. Fred Herschbach's death, he devised his one-half (½) interest in the North Dakota minerals to Frederick Herschbach. Frederick Herschbach later executed a document that assigned and conveyed to Robert Herschbach an undivided one-half (½) of all rights and properties acquired by Frederick Herschbach under the terms of E. Fred Herschbach's last will and testament which amounts to a one-quarter (¼) interest in the minerals. The Plaintiffs argue that upon Robert Herschbach's death, his one quarter (¼) interest in the North Dakota minerals, which was conveyed from Frederick Herschbach, was devised to Heidy Herschbach and/or the Herschbach Living Trust. The Plaintiffs claim that upon Hazel Herschbach's death, she devised her one-half (½) interest in the minerals to Frederick Herschbach and Robert Herschbach, equally. The Plaintiffs contend that since Robert Herschbach predeceased Hazel Herschbach, Robert Herschbach's interest in the minerals, devised to him from Hazel Herschbach, passed directly to Heidy Herschbach as Robert Herschbach's sole devisee. The Plaintiffs allege that as sole devisee of Robert Herschbach's last will and testament, Heidy Herschbach and/or the Herschbach Living Trust is the owner of a one-quarter (¼) interest in the North Dakota minerals upon Robert Herschbach's death, as well as the owner of an additional one-quarter (¼) interest in the North Dakota minerals upon Hazel Herschbach's death which amounts to a one-half (½) interest in the North Dakota minerals. The Plaintiffs contend that it is the wills of E. Fred Herschbach and Hazel Herschbach that conveyed Heidy Herschbach and/or the Herschbach Living Trust a one-half (½) interest in the North Dakota minerals as well as a one-half (½) interest in the Texas minerals.

The major difference between the actions pending in Texas and North Dakota is the location of the minerals. The actions were filed in the jurisdictions where the disputed minerals are located. The issues raised in the North Dakota litigation can be easily addressed in the Texas action since they present virtually identical issues, and judicial resources would be conserved by joining or consolidating the two cases into a single federal action. The related litigation in the Eastern District of Texas implicates considerations of judicial economy. If venue were transferred to Texas, the disputed factual and legal issues could be resolved in the same dispute. A transfer would promote judicial economy and be more cost effective and efficient for all of the parties and witnesses.

■ A court should rarely disturb a plaintiff's choice of forum "unless the balance is strongly in favor of the defendant." *Reid–Walen v. Hansen,* 933 F.2d 1390, 1394 (8th Cir.1991) (quoting *Lehman v. Humphrey Cayman, Ltd.,* 713 F.2d 339, 342 (8th Cir.1983)). The Plaintiffs reside in Washington. They filed an action in federal court in North Dakota because the minerals are located in various counties in North Dakota. However, the Plaintiffs filed an identical lawsuit in Texas concerning minerals located in that state. The wills of E. Fred Herschbach and Hazel Herschbach are at the heart of the case. If the actions were combined, the expenses to the parties would decrease and judicial resources would be expended more efficiently and effectively. This factor favors a transfer of venue to one location.

If venue remained in North Dakota, all of the parties would be required to travel out-of-state. The Plaintiffs intend to travel to the Eastern District of Texas to resolve the dispute as to the Texas minerals so they would only have to travel to one district if a change of venue were granted.

If venue were transferred to Texas, the actions could be consolidated because the actions pending in Texas and North Dakota are essentially the same dispute. Combining the actions would decrease the costs of litigation to all parties involved. This factor weighs in favor of a transfer to Texas.

Turning to the remaining factors—the enforcement of the judgment, obstacles to a fair trial, conflict of law issues, and the advantages of having a local court determine questions of local law—the Court sees no difficulty for any of the parties to enforce a favorable judgment in either federal forum. The Court does not find any relative advantages or obstacles to a fair trial for the parties in either forum. In viewing the totality of the circumstances, the Court finds that the interests of justice weigh in favor of a transfer of venue to the federal court in Texas.

■ Heidy Herschbach has an identical lawsuit pending against the Defendants in the Eastern District of Texas concerning Texas mineral interests. The Texas lawsuit was filed on March 6, 2009, one day after this lawsuit was filed in North Dakota. The only significant difference between the actions pending in Texas and North Dakota is the location of the minerals in dispute. The pleadings, exhibits, documents, witnesses, and parties in the two actions are identical. The interests of justice favor a transfer of venue and consolidation of the cases. Unless these actions are consolidated, the result will be a significant amount of duplicative effort, waste of judicial resources, and unnecessary expenses. A transfer of venue to Texas would allow the disputes to be combined which would promote efficiency for all of the parties. Accordingly, a transfer of venue to the Eastern District of Texas, Tyler Division, is warranted.

## IV. CONCLUSION

The Court has carefully considered all of the factors required to be evaluated under 28 U.S.C. § 1404(a). In its discretion, the Court finds that the Defendants have met their burden of showing that the interests of justice compel a transfer of this action to federal court in the Eastern District of Texas, Tyler Division. For the reasons set forth above, the Court **GRANTS** the Defendants' motion to transfer venue (Docket No. 6).

**IT IS SO ORDERED.**