**H.B. SHERMAN MANUFACTURING COMPANY, Plaintiff,**

v.

**RAIN BIRD NATIONAL SALES CORPORATION, Rain Bird Sprinkler Manufacturing Corporation, Rain Bird Service Center, Rain Bird Sales, Inc., Rain Bird Distribution Corp., Rain Bird International, Inc. and Clemar Manufacturing Company, Inc., Defendants.**

No. 97 C 3937.

United States District Court, N.D. Illinois, Eastern Division.

Aug. 20, 1997.

---

Lawrence S. Wick, Tamara Anne Gleason, Leydig, Voit & Mayer, Ltd., Chicago, IL, Eric Paulrud, Lewis, Rice & Fingersh, St. Louis, MO, for Plaintiff.

John F. Flannery, Mark Warren Hetzler, Fitch, Even, Tabin & Flannery, Chicago, IL, John E. Kelly, Kamran, Fattahi, Kelly, Bauersfeld & Lowry, Woodland Hills, CA, for Defendants.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The plaintiff, H.B. Sherman Manufacturing ("Sherman"), filed suit against the defendants, various companies comprising Rain Bird (collectively, "Rain Bird") claiming trademark infringement, unfair competition and deceptive trade practices. Rain Bird has moved to transfer this case to the Central District of California pursuant to 28 U.S.C. § 1404(a). For the reasons stated herein, the motion to transfer is granted.

### Background

Sherman is a Missouri corporation with its principal place of business in Poplar Bluff, Missouri. The companies comprising Rain Bird are all California corporations with their principal places of business in San Diego, Glendora, and Azusa, California.[1] Neither party has offices or facilities in Illinois.

Both parties manufacture and sell sprinklers and lawn and garden accessories, and both parties' products are sold in similar markets throughout the nation, including California, Missouri, and Illinois. This case arises from Rain Bird's use of the name "THE PREMIER SERIES" on a line of sprinklers. Sherman previously trademarked the name "THE PREMIER LINE" for its own line of sprinklers. Sherman claims that Rain Bird's use of a similar designation for its products infringes its trademark.

### Convenience of Litigants and Witnesses

■ The transfer statute, 28 U.S.C. § 1404(a), provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Transfer is appropriate under section 1404(a) where the moving party demonstrates that (1) venue is proper in the transferor district; (2) venue is proper in the transferee district; and (3) the transfer is for the convenience of the parties and the witnesses and is in the interest of justice. *GEN 17, Inc. v. Sun Microsystems, Inc.*, 953 F.Supp. 240, 242 (N.D.Ill.1997) (citation omitted). "The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and therefore, is committed to the sound discretion of the trial judge." *SRAM Corporation v. SunRace Roots Enterprise Co.*, 953 F.Supp. 257, 259 (N.D.Ill.1997) (quoting *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir.1986)).

The first two elements are not at issue because both parties agree that venue is proper in both this court and the Central District of California. Accordingly, I will focus on whether the transfer would be convenient for the parties and witnesses and in the interest of justice.

■ Rain Bird has the burden of showing that "the transferee forum is clearly more convenient" than the transferor forum. *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir.1989) (citation omitted). When evaluating the convenience of a transfer, the Court may consider several factors, including (1) the plaintiff's choice of forum; (2) the situs of material events; (3) ease of access to sources of proof; and (4) the convenience to the parties of litigating in the respective forums. *College Craft Companies, Ltd. v. Perry*, 889 F.Supp. 1052, 1054 (N.D.Ill.1995) (citation omitted).

#### 1. Plaintiff's Choice of Forum

■ The plaintiff's choice of forum is generally given substantial deference because it is probably more convenient to that party.

---

1. Although Sherman named eight defendants in its complaint, Rain Bird notes that one of the named defendants, Rain Bird Service Center, is a non-existent entity.

**630**

*Id.* Where, as in the present case, the plaintiff is not a resident of the forum district, this factor is given no additional weight and is merely another factor to consider along with the others. *Lachmund v. ADM Investor Services, Inc.,* No. 96 C 4143, 1997 WL 43214, at *4 (N.D.Ill. Jan.28, 1997).[2]

**2. Situs of Material Events**

Rain Bird contends that transfer is proper because the situs of material events is in California, their principal place of business, where all decisions concerning marketing, design, and production are made. Sherman argues that trademark infringement arises where the confusion of consumers occurs. Because the sprinkler products at issue are marketed in Illinois, it claims that the material events occurred in this district.

■ Intellectual property cases generally focus on the "activities of the alleged infringer, its employees, and its documents; therefore, the location of the infringer's place of business is often the critical and controlling consideration." *Habitat Wallpaper & Blinds, Inc. v. K.T. Scott, Ltd.,* 807 F.Supp. 470, 474 (N.D.Ill.1992); see *GEN 17, Inc. v. Sun Microsystems, Inc.,* 953 F.Supp. 240 (N.D.Ill.1997) (transferring patent infringement case, in part, because majority of defendants' research and development facilities, some of their manufacturing facilities, and their corporate headquarters were in the transferee district). Rain Bird's headquarters and facilities are located in California, and five of the companies are within the Central District.

Although the actual injury in a trademark infringement case occurs where the consumer is misled, *SRAM Corp.,* 953 F.Supp. at 259, here, the parties sell their products in similar markets nationwide. The fact that Rain Bird markets its products in the Northern District does not compel the parties to try the case here. Any consumer confusion that occurs in the Northern District presumably also occurs in the Central District of California as well as other locales where the products are sold. Accordingly, I find that this factor weighs in favor of transfer.

**3. Ease of Access to Sources of Proof**

■ This factor involves the location of both relevant witnesses and evidence. *GEN 17, Inc.,* 953 F.Supp. at 243. "Probably the most important factor is whether another forum would better serve the convenience of witnesses." *The Northwestern Corp. v. Gabriel Mfg., Inc.,* No. 96 C 2004, 1996 WL 73622, at *5 (N.D.Ill. Feb. 16, 1996) (citation omitted). After the parties identify the key witnesses and make a general statement regarding their expected testimony, *Heller,* 883 F.2d at 1293 (citations omitted), the court should focus on the "nature and quality of the witnesses' testimony with respect to the issues in the case." *Vandeveld v. Christoph,* 877 F.Supp. 1160, 1168 (N.D.Ill.1995). The court also should consider the convenience of non-party witnesses because employees of the parties likely will appear voluntarily. *College Craft,* 889 F.Supp. at 1055.

Rain Bird indicates that twelve individuals have been identified by both parties for their importance in resolving this matter. Rain Bird states that the testimony of five of these potential witnesses will be particularly crucial. These individuals include: the Vice President of one of the defendant companies who has overall control over the sale of the alleged infringing products; the Marketing Coordinator of one of defendants' companies who selected the name "Premier Series" in conjunction with the accused products; and three individuals no longer employed by Rain Bird who have been identified by Sherman as having had contact with Sherman regarding potential business between Rain Bird and

2. Sherman argues that deference to its choice of forum is also appropriate where significant connections exist between its claim and the chosen forum. It cites *Black v. Mitsubishi Motors Credit of America,* No. 94 C 3055, 1994 WL 424112, at *1 (N.D.Ill. Aug.10, 1994), in support of this proposition. A close reading of Black, however, reveals that its inquiry is not analogous to the present one. The court in Black (and the cases upon which it relies) combined its focus on the relationship between material events of the case and the forum (element 2) with its inquiry into the plaintiff's chosen forum (element 1). Both Rain Bird and Sherman chose to address the situs of material events independently of the plaintiff's initial forum choice. Therefore, I will address these factors separately and not collapse them into one inquiry.

Sherman. All of these individuals reside in California. More importantly, the former employees are non-party witnesses residing beyond the subpoena power of this Court.

Interestingly, neither party identifies a single Illinois resident as a potential witness. In fact, the only individual considered a potential key witness who does not reside in California is Sherman's president, a resident of Missouri. Although Sherman speculates that "additional employees of plaintiff and third party witnesses ... will testify in this suit," it has not provided the names and residences of these individuals. These individuals likely will not play a pivotal role in resolving this matter if they have not been identified at this time. *See Roots Partnership v. Lands' End, Inc.*, No. 90 C 1310, 1990 WL 186776, at *5 (N.D.Ill. Nov.14, 1990) (Rovner, J.) (presuming that unidentified witnesses do not have a crucial role in the outcome of the litigation). Thus, I will consider only the convenience to the individuals whose identities are known at this time. Of those individuals, only one lives more than one hundred miles away from the proposed forum. Accordingly, the Central District of California is a more convenient forum for the majority of witnesses identified by the parties in this case.

With respect to the location of evidence, Rain Bird states that five of the defendants maintain their principal place of operation within the Central District of California and two within the Southern District of California. Because seven named defendants are located in California, much of the documentary evidence will include documents and records located in California. On the other hand, Sherman's offices, and most likely many of their business records, are located in Missouri, a locale not favoring either forum. The close proximity of some of the evidence to California and the lack of evidence in Illinois supports transferring the matter to California.

**4. Convenience to the Parties**

This factor entails a consideration of where the parties reside and their respective abilities to bear the expense of trial in a particular forum. *Heller Financial, Inc. v. Riverdale Auto Parts, Inc.*, 713 F.Supp. 1125, 1130 (N.D.Ill.1989). Sherman is a Missouri company. It will bear expenses for travel and lodging no matter where the case is litigated. The only costs it has to consider are those incurred by its president, as he is the only employee considered a potential witness. Conversely, Rain Bird is composed of seven California corporations. As previously discussed, a considerable number of their employees have been named as potential witnesses. A trial in this forum will inconvenience Rain Bird because it will have to bear the costs of travel and lodging for those employees. These costs will be alleviated in the proposed forum. Although Rain Bird is significantly larger than Sherman, the minimal burdens Sherman will incur litigating in California do not outweigh the probable burden imposed on Rain Bird if it is required to defend this matter in Illinois. Hence, the convenience of the parties would be served best by transfer.

### The Interest of Justice

The "interest of justice" component addresses the "efficient administration of the court system," rather than the private concerns of the parties and witnesses. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir.1986). In analyzing this factor, a court considers such concerns as each court's familiarity with applicable law and which forum is more likely to provide the litigants with a speedy trial. *Id.*[3]

Trademark infringement is a question of federal law which both this Court and the Central District of California are equally competent to hear. The Central District of

---

**3.** Both parties suggest that the "interest of justice" analysis should examine the connection between the plaintiff's chosen forum and the events underlying the claim as well as the courts' ability to compel nonparty witnesses. Those concerns are not relevant because they already have been addressed in the foregoing analysis, and this fac-

tor "embraces traditional notion of judicial economy, rather than the private interests of the litigants and their witnesses," *Applied Web Systems, Inc. v. Catalytic Combustion Corp.*, No. 90 C 4411, 1991 WL 70893, at *6 (N.D.Ill. Apr.29, 1991) (citing Coffey, 796 F.2d at 221).

**632**

California, however, is more likely to provide the parties with a speedy trial. Two federal court management statistics, the "median number of months from filing to disposition of civil cases and the median number of months from issue to trial," are the most relevant to this analysis. *Applied Web Systems*, 1991 WL 70893, at *8. Here, a comparison of the two most recent statistics yields mixed results. The Federal Court Management Statistics Report for 1996 reveals that the median number of months from filing to disposition of a civil case in this district was five months, compared to six months in the Central District of California. See Administrative Office of the United States Courts, 1996 Federal Court Management Statistics pp. 47, 68. The same report indicates that the median time from issue to trial was 24 months in this district, compared to 17 months in the Central District of California. *Id.* These two statistics suggest that the parties are only slightly more likely to receive a speedier disposition of their claims in this district but are significantly more likely to receive a speedier trial in the Central District of California. Transfer of this case is therefore more efficient and serves the interest of justice.

### Conclusion

Rain Bird demonstrates that the Central District of California is clearly more convenient than this forum. The convenience of the witnesses, the convenience of the parties, the location of a majority of the material events, and the likelihood of a speedier trial all favor transferring the matter. Accordingly, Rain Bird's motion to transfer is granted.