**Brandy AUSTIN, individually and as mother and natural guardian of Christa B. Austin, Plaintiff,**

v.

**NESTLE USA, INC., Defendant.**

**Civ. No. 09–2675 (RHK/JSM).**

United States District Court,
D. Minnesota.

Dec. 28, 2009.

Stephen C. Rathke, Lommen, Abdo, Cole, King & Stageberg, PA, Minneapolis, MN, for Plaintiff.

James A. O'Neal, Kristin R. Eads, James E. Springer II, Faegre & Benson LLP, Minneapolis, MN, Samuel L. Felker, Jody E. O'Brien, Bass, Berry & Sims PLC, Nashville, TN, for Defendant.

## MEMORANDUM OPINION AND ORDER

RICHARD H. KYLE, District Judge.

### INTRODUCTION

This action arises out of the ingestion of powdered infant formula by Plaintiff Brandy Austin's daughter, Christa, shortly af-

ter her birth.[1] On behalf of herself and Christa, she sued Defendant Nestle USA, Inc. ("Nestle"), the formula's manufacturer, alleging that Christa suffered severe brain damage because the formula was contaminated with *Enterobacter sakazakii* bacteria. Nestle now moves to transfer this action to the United States District Court for the District of South Carolina. For the reasons set forth below, the Court will grant the Motion.

## BACKGROUND

Plaintiff, a South Carolina resident, gave birth to Christa on September 19, 2006, at Spartanburg Regional Medical Center in Spartanburg, South Carolina. (Am. Compl. ¶¶ 1, 4.) Plaintiff and Christa were discharged from the hospital two days later; at that time, the hospital gave Plaintiff an unsolicited gift bag containing a can of Nestle Good Start Supreme powdered infant formula. (*Id.* ¶ 5.) According to Plaintiff, the formula was contaminated with *Enterobacter sakazakii* bacteria. (*Id.* ¶ 16.) [2]

Following their discharge, Plaintiff exclusively fed Christa the powdered infant formula she had been given. (*Id.* ¶ 7.) Three days later, Christa began to exhibit symptoms of a possible infection. (*Id.* ¶ 8.) She was then taken to the emergency room at Wallace Thomson Hospital in Union, South Carolina, for treatment. (*Id.* ¶ 8.) The Complaint does not specify precisely what occurred there, noting only that she was "evaluated and discharged." (*Id.*)

The following morning, September 25, 2006, Christa remained ill. As a result, Plaintiff took her to Spartanburg Regional Medical Center. (*Id.* ¶ 9.) There, she was diagnosed with *Enterobacter sakazakii* meningitis and was transferred to Greenville Hospital System University Medical Center in Greenville, South Carolina. (*Id.*) According to Plaintiff, the meningitis resulted in severe brain damage that will prevent Christa from ever living independently. (*Id.* ¶¶ 9, 72.)

Plaintiff later commenced the instant action against Nestle in Hennepin County District Court, alleging various tort and warranty claims. Nestle timely removed it to this Court and now moves to transfer it to the District of South Carolina.

## STANDARD OF REVIEW

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A court faced with a motion to transfer, therefore, must undertake a two-part inquiry. "The initial question . . . is whether the action might have been brought in the proposed transferee district. If so, the Court must [then] consider the convenience and interest of justice factors." *Totilo v. Herbert*, 538 F.Supp.2d 638, 639–40 (S.D.N.Y.2008).

As the text of Section 1404(a) makes clear, three general factors inform whether a district court should grant a motion to transfer: (1) the convenience of

---

**1.** The Court uses the singular "Plaintiff" because Brandy is the only party-plaintiff in this case, having sued in two different *capacities*. *See* Fed.R.Civ.P. 17(a)(1), (c)(1).

**2.** *Enterobacter sakazakii* can cause bloodstream and central-nervous-system infections and is often associated with meningitis, or inflammation of the tissue surrounding the

brain or spinal cord, in newborns. *See* Anna B. Bowen & Christopher R. Braden, Centers for Disease Control and Prevention, *Invasive Enterobacter Sakazakii Disease in Infants,* Emerging Infectious Diseases vol. 12 no. 8 (Aug. 2006), available at http://www.cdc.gov/Ncidod/EID/vol12no08/05–1509.htm.

the parties, (2) the convenience of the witnesses, and (3) the interests of justice. *See also Terra Int'l. Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir.1997). A district court may also consider any other factors it finds relevant when deciding whether transfer is warranted. *Id.* There is no precise mathematical formula to be employed when balancing these factors. As one court has noted, " '[w]eighing' and 'balancing' are words embodying metaphors which, if one is not careful, tend to induce a fatuous belief that some sort of scales or weighing machinery is available. Of course it is not. At best, the judge must guess, and we should accept his guess unless it is too wild." *Ford Motor Co. v. Ryan*, 182 F.2d 329, 331–32 (2d Cir.1950). Hence, a district court enjoys "much discretion" when deciding whether to grant a motion to transfer. *Terra Int'l*, 119 F.3d at 697.

■ Courts must be cognizant, however, that transfer motions "should not be freely granted." *In re Nine Mile Ltd.*, 692 F.2d 56, 61 (8th Cir.1982), *abrogated on other grounds by Mo. Hous. Dev. Comm'n v. Brice*, 919 F.2d 1306 (8th Cir.1990). A "heavy" burden rests with the movant to demonstrate why a case should be transferred. *E.g., Integrated Molding Concepts, Inc. v. Stopol Auctions L.L.C.*, Civ. No. 06–5015, 2007 WL 2263927, at *5 (D.Minn. Aug. 6, 2007) (Schiltz, J., adopting Report & Recommendation of Erickson, M.J.); *Radisson Hotels Int'l. Inc. v. Westin Hotel Co.*, 931 F.Supp. 638, 641 (D.Minn.1996) (Kyle, J.). To satisfy that "heavy" burden, the movant must demonstrate that the relevant factors weigh "strongly" in its favor. *Id.*

## ANALYSIS

The first question in the transfer analysis—whether this action "might have been brought" in the District of South Carolina—is not in dispute. Hence, the Court proceeds directly to the second (and final) question: do the convenience of the parties, the convenience of the witnesses, and the interests of justice, taken collectively, weigh "heavily" in favor of transfer? The Court concludes that this question should be answered in the affirmative.

### I. Convenience of parties

■ The first factor, the convenience of the parties, is neutral. On one hand, there cannot be any serious dispute that South Carolina is a more convenient forum than Minnesota for Plaintiff, a South Carolina resident. *See Hughes v. Wheeler*, 364 F.3d 920, 924–25 (8th Cir.2004) ("There is no doubt some inconvenience in litigating a case far from home.").[3] This is particularly true given Christa's alleged medical condition; obviously, Plaintiff cannot attend to her daughter's serious medical needs if she is compelled to travel halfway across the country for a deposition or trial.[4] On the

---

**3.** As Plaintiff herself recognizes, it is of no moment that Plaintiff's counsel is located in Minnesota. *E.g., Nelson v. Soo Line R.R. Co.*, 58 F.Supp.2d 1023, 1027 (D.Minn.1999) (Doty, J.) ("[I]t is axiomatic that convenience to plaintiff's counsel is not a factor to be considered in deciding the propriety of transfer.") (internal quotation marks and citation omitted).

**4.** Plaintiff argues that because she opted to file suit here, Nestle has "no right" to assert that South Carolina is a more convenient

forum. (Mem. in Opp'n at 9.) The Court disagrees. At most, Plaintiff's decision to file suit here indicates that she considers Minnesota a convenient forum, *e.g., Caddy Prods., Inc. v. Greystone Int'l. Inc.*, Civ. No. 05–301, 2005 WL 3216689, at *3 (D.Minn. Nov. 29, 2005) (Tunheim, J.); it does *not* mean that Nestle should be precluded from arguing that South Carolina is *more* convenient for Plaintiff. Indeed, to hold otherwise would be to ignore reality—in most instances, it is self-evident that litigating at home (and, hence,

other hand, Nestle will be inconvenienced regardless of where this case is venued—it is headquartered in California; Nestle Nutrition, the Nestle subsidiary that manufactured the formula in question, is headquartered in New Jersey; and the Nestle laboratory that tested the formula is located in Ohio. At first blush, therefore, it would seem that the convenience-of-parties factor favors transfer.[5]

Yet, Plaintiff correctly notes that the subject formula was manufactured at a Nestle Nutrition plant in Eau Claire, Wisconsin, approximately 70 miles from St. Paul. Nestle employees with pertinent information may be located there, and litigating in Minnesota rather than South Carolina will be far more convenient for such individuals.[6] Moreover, Nestle has several offices in this state, lessening the inconvenience for out-of-state employees traveling here for depositions or for trial.[7]

Because there are facts pressing on both sides of the convenience-of-parties scale, the Court concludes that this factor favors neither Minnesota nor South Carolina.

## II. Convenience of Witnesses

Regarding the convenience of witnesses—which is often considered the most important factor in the transfer analysis, 15 Wright, Miller & Cooper, *Federal Practice & Procedure: Jurisdiction* § 3849 at 199 (3d ed.2007)—the Court focuses on non-parties because "it is generally assumed that witnesses within the control of the party calling them, such as employees, will appear voluntarily in a foreign forum." *FUL Inc. v. Unified Sch. Dist. No. 204*, 839 F.Supp. 1307, 1311 (N.D.Ill.1993): *accord Continental Airlines, Inc. v. Am. Airlines, Inc.*, 805 F.Supp. 1392, 1397 (S.D.Tex.1992). Here, the key non-party witnesses are located in or near South Carolina.

For example, Christa's treating physicians—those treating her currently and those treating her when she first fell ill—will provide important information regarding her medical condition and her prognosis. Plaintiff concedes that these individuals are located in South Carolina but attempts to deflect the importance of their testimony, arguing that "Christa's

---

having discovery conducted there) would be more convenient for an individual plaintiff than litigating elsewhere. For this reason, numerous cases "have been transferred to the [state of the] plaintiff's residence, even though he or she would have preferred to have the case lodged elsewhere." 15 Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction § 3849 at 177 (3d ed. 2007).

5. Insofar as documents will be produced electronically in this case, the Court agrees with the parties (*see* Mem. in Opp'n at 13; Reply Mem. at 3) that the location of their documents is of little consequence to the transfer analysis. *See, e.g., Abbott v. Lockheed Martin Corp.*, No. 06–cv–701, 2007 WL 844903, at *4 (S.D.Ill. Mar. 20, 2007); *A Slice of Pie Prods., LLC v. Wayans Bros. Entm't*, 392 F.Supp.2d 297, 308 (D.Conn.2005).

6. Nestle asserts that "Paul Caseletto, who is knowledgeable about quality control and assurance at the Eau Claire plant at the time

the formula in question was manufactured, currently maintains his office in Florham Park, New Jersey, and resides in Basking Ridge, New Jersey." (*See* Besman Aff. ¶ 6.) But Nestle nowhere argues that Caseletto is the *only* person with such knowledge, or even that he is the *most* knowledgeable. Indeed, in another case against Nestle concerning *Enterobacter sakazakii* contamination in infant formula pending in the Western District of Tennessee, Nestle recently submitted an affidavit from John Younger, the plant manager at the Eau Claire facility. (*See* Rathke Aff. Ex. 6.)

7. Plaintiff asserts that witnesses relevant to this case may be located in these Minnesota offices (*see* Mem. in Opp'n at 11), but none of the offices is involved in the manufacture, sale, or distribution of infant formula. (*See* Besman Aff. ¶¶ 3–4.)

condition is what it is" and that her physicians will "have little to say concerning the central issue in this case," namely, whether the formula was contaminated. (Mem. in Opp'n at 10–11.) Yet, the physicians are likely to have information relevant to causation—for instance, whether the symptoms Christa exhibited as a newborn were consistent with bacterial meningitis—and may be particularly relevant for any third-party claims Nestle might later assert (as discussed in more detail below). They will also provide information regarding the extent of Christa's injuries, which is critical to any assessment of damages, *see, e.g., Foley v. United States*, No. 09–cv–239, 2009 WL 3400997, at *3 (D.Me. Oct. 19, 2009) (testimony by friends and medical providers regarding plaintiff's damages relevant to convenience of witnesses analysis), particularly in a case involving life-long injuries suffered by a newborn.

Moreover, each of these witnesses is beyond the subpoena power of this Court and, hence, could not be compelled to testify at trial if this case were to remain here. While the parties could preserve these witnesses' testimony for trial by videotaping their depositions, the Court believes that "[t]rial by videotape is simply not preferable to live examination in front of a jury." *In re Aredia & Zometa Prods. Liab. Litig.*, No. 3:06–MD–1760, 2008 WL 686213, at *3 (M.D.Tenn. Mar. 6, 2008); *accord, e.g., Kay v. Nat'l City Mortgage Co.*, 494 F.Supp.2d 845, 853 (S.D.Ohio 2007); *Hoppe v. G.D. Searle & Co.*, 683 F.Supp. 1271, 1276 (D.Minn.1988) (Renner, J.) ("Forcing the defendant to conduct its case by deposition, even videotape deposition, is simply unjustified.").

Plaintiff argues that the convenience-of-witnesses factor favors Minnesota because FDA employees working here are likely to testify. In support, she relies on an FDA "Consumer Complaint/Injury Report" submitted by a physician at Spartanburg Regional Medical Center. Her reliance is misplaced, as the report supports the conclusion that South Carolina, not Minnesota, is the most appropriate forum.

Although the report states that Nestle's Eau Claire manufacturing plant is located within the jurisdiction of the FDA's Minneapolis office (referred to on the form as "MIN–DO"), the report actually was received by the FDA's *Atlanta* office ("ATL–DO"), and it indicates that investigatory activities were "accomplished" by that office. (*See* Rathke Aff. Ex. 1; O'Brien Aff. ¶¶ 2–3.) Plaintiff's counsel asserted at oral argument that the FDA's Minneapolis office "played a major role" in the investigation, but there is simply nothing in the record to support that assertion. Rather, it appears that FDA employees in Atlanta, not Minneapolis, are the ones most likely to have information pertinent to this case, and South Carolina—a short distance from Atlanta—would be far more convenient for such employees than Minnesota.

All told, no non-party witnesses located in (or near) Minnesota have been identified by the parties, but several such witnesses are located in or near South Carolina. Accordingly, the convenience-of-witnesses factor strongly favors transfer.

### III. Interests of justice

Finally, the interests of justice also strongly favor transfer. When analyzing this factor, courts consider, among other things, judicial economy, the plaintiff's choice of forum, docket congestion, each party's ability to enforce a judgment, obstacles to a fair trial, conflict-of-law issues, and each court's relative familiarity with the applicable law. *E.g., Terra Int'l*, 119 F.3d at 696; *Prod. Fabricators, Inc. v. CIT Commc'ns Fin. Corp.*, Civ. No. 06–537, 2006 WL 2085413, at *3 (D.Minn. July

25, 2006) (Kyle, J.). While some of these items (such as docket congestion and the ability to enforce a judgment) are irrelevant in the present case, several militate strongly in favor of transfer.

*Controlling law.* There does not appear to be any serious dispute between the parties that South Carolina law will govern this action. As the Supreme Court has recognized, "[t]here is an appropriateness . . . in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle . . . law foreign to itself." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 509, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) (discussing *forum non conveniens* ). While this Court is routinely called upon to apply the law of other states and is equipped to do so, *see, e.g., Advanced Logistics Consulting, Inc. v. C. Enyeart LLC,* Civ. No. 09–720, 2009 WL 1684428, at *6 (D.Minn. June 16, 2009) (Kyle, J.), the District of South Carolina remains "better suited to apply and interpret its state substantive law." *Adkins v. United States,* No. 8:05–CV–1851, 2006 WL 398400, at *2 (M.D.Fla. Feb. 16, 2006); *accord, e.g., Netwig v. Ga.-Pac. Corp.,* Civ. No. 01–1253, 2002 WL 391354, at *3 (D.Minn. Mar. 11, 2002) (Frank, J.) (although this Court "is certainly capable of fairly and aptly applying the law of [Kansas], a Kansas court is undoubtedly more familiar with the relevant law and its proper application").

*South Carolina's interest.* The nexus between Minnesota and this action is nonexistent or, at best, extremely tenuous. South Carolina, on the other hand, is the state of Plaintiff's and Christa's residence; the place where Christa was injured; and the state where she received, and continues to receive, treatment. South Carolina, therefore, has a strong interest in hearing this case far outweighing Minnesota's interest. *E.g., Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473–74, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (a state "generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors") (citation omitted); *Netwig,* 2002 WL 391354, at *4 ("Kansas has an obvious interest in protecting the rights of its citizenry and resolving local controversies in its own courts."). And that interest is heightened where, as here, the law of the proposed transferee forum will apply. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1096 (10th Cir. 1998).

*Judicial economy and obstacles to a fair trial.* Nestle avers that it may assert third-party claims against Wallace Thompson Hospital and certain of its doctors, who evaluated Christa when she first showed signs of an infection but ultimately discharged her without diagnosing *Enterobacter sakazakii* meningitis. (*See* Def. Mem. at 7–10; Reply Mem. at 7–9,) The hospital and the doctors, however, indisputably are not subject to personal jurisdiction in Minnesota and cannot be joined as parties if this case were to remain here. Were Nestle to assert such claims, the end result would be piecemeal litigation—in fact, that is precisely the road Plaintiff claims Nestle should take. (*See* Mem. in Opp'n at 19 (asserting that Nestle's third-party claims should be "vindicate[d] by contribution after it compensates Christa for causing her devastating injury and disability").)

But the avoidance of piecemeal litigation is a factor given "great weight" by courts analyzing the interests of justice. 15 Wright, Miller & Cooper, *Federal Practice & Procedure: Jurisdiction* § 3854 at 250 (3d ed. 2007). "Thus with great frequency, . . . cases have been transferred to a forum in which . . . it would be possible to join an

additional defendant or bring in a third-party defendant who is not subject to service of process in the original forum." *Id.* at 252–63; *accord, e.g., GMAC/Residential Funding Corp. v. Platinum Co. of Real Estate & Fin. Servs., Inc.,* Civ. No. 02–1224, 2003 WL 1572007, at *3 (D.Minn. Mar. 13, 2003) (Kyle, J.) ("The avoidance of duplicative or piecemeal litigation is a factor that weighs in favor of transferring an action to a district in which all parties can be joined in a single action."); *Bolles v. K Mart Corp.,* No. Civ. A. 01–1118, 2001 WL 767605, at *3 (E.D.Pa. July 9, 2001) ("[A]bility to implead a third party defendant in the proposed transferee forum is an important consideration favoring transfer of an action.") (citation omitted).[8]

In a similar vein, Nestle's inability to implead (potential) third-party defendants would hamper its prospects of obtaining a fair trial here. In the Court's view, a jury is less likely to accept the argument that third parties were responsible for Christa's injuries, at least in part, if those third parties are not before the jury—out of sight, out of mind, as the old saying goes. Furthermore, under South Carolina law, it appears that a jury *cannot* apportion comparative fault to a non-party. S.C.Code Ann. § 15–38–15(C)(3) (2008). Under these circumstances, it is unlikely that Nestle could obtain a fair trial in Minnesota without the third-parties' participation, which simply cannot be obtained.

■ Relying on an "expert" opinion submitted by her own counsel, Plaintiff argues that Nestle's third-party-defendant arguments are "entirely contrived" (Mem. in Opp'n at 19), because "nothing in [Christa's] medical records suggests any negligence whatsoever on the part of Wallace Thompson Hospital." (Rathke Aff. ¶ 6.) The Court rejects out of hand this self-serving "opinion." "[E]xpert testimony on legal matters is not admissible." *S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.,* 320 F.3d 838, 841 (8th Cir.2003). Similarly, "the expert testimony of an attorney as to ... the legal significance of facts is inadmissible." *Motown Prods., Inc. v. Cacomm, Inc.,* 668 F.Supp. 285, 288 (S.D.N.Y.1987), *rev'd on other grounds,* 849 F.2d 781 (2d Cir.1988); *accord, e.g., Okland Oil Co. v. Conoco Inc.,* 144 F.3d 1308, 1328 (10th Cir.1998) ("[A]n expert may not ... state legal conclusions drawn by applying the law to the facts."). Whether the facts suggest negligence on the part of Christa's treating physicians or Wallace Thompson Hospital is an issue for the factfinder to decide, if Nestle asserts such claims.

Plaintiff also argues that Nestle cannot assert third-party claims against Christa's medical providers because, under South Carolina law, a tortfeasor is responsible for "any injury caused by subsequent medical malpractice." (Mem. in Opp'n at 18 (citing *Graham v. Whitaker,* 282 S.C. 393, 321 S.E.2d 40 (1984)).) But as Nestle correctly notes in its Reply, *Graham*

---

8. Plaintiff relies heavily upon *Burks v. Abbott Laboratories,* Civ. No. 08–3414, 2008 WL 4838720 (D.Minn. Nov. 5, 2008) (Tunheim, J.), a case with facts similar to the instant action. There, as here, an infant suffered meningitis after ingesting powdered formula allegedly contaminated by *Enterobacter sakazakii*—notably, counsel for the plaintiffs in *Burks* represents Plaintiff here. Although the plaintiffs lived in Louisiana and the formula in question was ingested there, the defen-dant's motion to transfer was denied. But nowhere in *Burks* was it suggested that the defendant-manufacturer intended to implead the infant's treating physicians, a key factor here regarding the fairness and adequacy of litigating in Minnesota. In any event, the undersigned is not bound by *Burks* and, to the extent it cannot be reconciled with the decision reached herein, the undersigned respectfully declines to follow it.

held that a tortfeasor is responsible only for *reasonably foreseeable* actions of subsequent tortfeasors. 321 S.E.2d at 44. Although generally "the negligence of an attending physician is reasonably foreseeable," *id.*, that is not true in all circumstances. *See generally* V. Woerner, Annotation, *Civil Liability of one Causing Personal Injury for Consequences of Negligence, Mistake, or Lack of Skill of Physician or Surgeon,* 100 A.L.R.2d 808 (1965) (cited with approval in *Graham* ). Without development of the record, the Court cannot say that Nestle's potential third-party claims have no possible validity.

*Statutory venue considerations.* The purposes behind the venue statute, 28 U.S.C. § 1391, also would be best served by transfer. "One of the central purposes of statutory venue is to ensure that a defendant is not 'haled into a remote district, having no real relationship to the dispute.' " *Richards v. Aramark Servs., Inc.,* 108 F.3d 925, 928 (8th Cir.1997) (citation omitted). As discussed above, this action has no substantial connection to Minnesota. Permitting it to remain here, therefore, would undermine the purposes behind Section 1391.

*Plaintiff's choice of forum.* Plaintiff cites a plethora of cases for the proposition that her choice of forum is entitled to significant deference. (*See* Mem. in Opp'n at 7–8.) As this Court has previously recognized, however, the enactment of Section 1404(a) in 1948 abrogated the long-held rule, developed under the doctrine of *forum non conveniens,* that a plaintiff's choice of forum is entitled to substantial weight in the transfer analysis. *See Ahlstrom v. Clarent Corp.,* Civ. No. 02–780, 2002 WL 31856386, at *3 n. 9 (D.Minn. Dec. 19, 2002) (Kyle, J.). Instead, the plaintiff's choice is simply "one factor to be considered." *Id.* Furthermore, whatever

weight a plaintiff's choice of forum obtains is diminished where (1) she does not reside in the chosen forum or (2) the underlying events did not occur there. *E.g., Burnett v. Wyeth Pharm., Inc.,* Civ. No. 06–4923, 2008 WL 732425, at * 1 (D.Minn. Mar. 17, 2008) (Frank, J.); *Ahlstrom,* 2002 WL 31856386, at *4 ("significantly less deference"). Both are true here. Plaintiff's choice of forum, therefore, does not alter the interests-of-justice calculus.

For all of these reasons, the Court concludes that the interests-of-justice factor weighs heavily in favor of transfer.

## CONCLUSION

Having considered the relevant factors, the Court concludes that the balance weighs strongly in favor of transferring this action. Looked at through the lens of practicality—which is, after all, what Section 1404(a) is all about—Nestle's Motion can really be distilled to a simple question: does it make sense to compel litigation in Minnesota when this state bears no relationship to the parties or the underlying events? The answer is, "No." Courts routinely transfer product-liability actions such as this one to the district in which "the allegedly defective product was used and [the plaintiff's] injury occurred." *Coppola v. Ferrellgas, Inc.,* 250 F.R.D. 195, 198 (E.D.Pa.2008) (collecting cases). Plaintiff resides in South Carolina, her daughter's injuries occurred there, and all of her medical treatment has been provided (and continues to be provided) in that state. South Carolina, therefore, is the appropriate place for this litigation to proceed. This Court simply "should not be required to expend [its] resources" on cases such as this one "that have little relationship to this district." *Varnado v. Danek Med., Inc.,* No. Civ. A. 95–1802, 1998 WL 524896, at *3 (E.D.La. Aug. 19, 1998).

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Defendant's Motion to Transfer (Doc. No. 8) is **GRANTED** and this case is **TRANSFERRED** to the United States District Court for the District of South Carolina. The Clerk of this Court is directed to take all steps necessary to effectuate the transfer in an expeditious fashion.