**COSMETIC WARRIORS
LIMITED, Plaintiff,**

v.

**Glenn ABRAHAMSON d/b/a One Bath
and Body, Wink Bath and Body, LLC,
Target Corporation, and John Doe En-
tities 2 through 5, Defendants.**

**Civ. No. 10–938 (RHK/JSM).**

United States District Court,
D. Minnesota.

July 8, 2010.

Jennifer J. Spencer, Lawrence J. McNamara, Deborah L. Sterling, Spencer Crain Cubbage Healy & McNamara, PLLC, Dallas, TX, Richard G. Jensen, Fabyanske,

Westra, Hart and Thomson, P.A., Minneapolis, MN, for Defendants.

## MEMORANDUM OPINION AND ORDER

RICHARD H. KYLE, District Judge.

### INTRODUCTION

This matter is before the Court on the Motion of Defendants Glenn Abrahamson d/b/a One Bath and Body ("Abrahamson") and Wink Bath and Body, LLC ("Wink") to dismiss for lack of personal jurisdiction and improper venue or, in the alternative, to transfer this case to the United States District Court for the Northern District of Texas. For the reasons set forth below, the Court will grant the Motion in part and transfer this action.

### BACKGROUND

#### I. CWL and the underlying facts

Plaintiff Cosmetic Warriors Limited ("CWL") is "one of the world's premier suppliers of bath, hair care, and beauty products made from natural, wholesome ingredients." (Am. Compl. ¶ 9.) It sells its products in the United States and elsewhere under the LUSH mark. (*Id.* ¶ 10.) It is a British corporation with its principal place of business in Dorset, Great Britain. (*Id.* ¶ 1.)

CWL alleges that Defendants Abrahamson, Wink, and Target Corporation ("Target") advertise, promote, and/or sell competing bath products under the ONE mark, and that mark is confusingly similar to the LUSH mark. (*Id.* ¶¶ 18–26.) It commenced this action alleging trademark infringement, dilution, and unfair competition under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and common law. It also asserts claims against Defendants under two Minnesota deceptive-trade-practices statutes.

## II. The Defendants

Abrahamson is a California resident and managing member of Wink, which is a Nevada limited liability company with its principal place of business in Carrollton, Texas, a Dallas suburb. (*Id.* ¶ 2; 6/1/10 Abrahamson Dec. ¶¶ 1–4.)[1] Wink's lone other employee and managing member, Mark Parker, resides in Dallas. (*Id.* ¶¶ 1, 14(a).) The remaining Defendant, Target, is a Minnesota corporation with its principal place of business in Minneapolis. (Am. Compl. ¶ 3A.)

According to Abrahamson, the design of the allegedly infringing One mark occurred at his home in California and at Wink's offices in Texas. (6/1/10 Abrahamson Dec. ¶ 17.) Wink then granted an exclusive license of the One mark to BASE4 Group, Inc. ("BASE4"), a Delaware corporation with its principal place of business in Texas. (6/29/10 Abrahamson Decl. ¶¶ 4–5.) BASE4, in turn, manufactures and markets One products to retailers, including Target. (*Id.* ¶ 5.)[2] Although the Amended Complaint lumps all of the Defendants together, CWL does not appear to dispute that Target is merely a reseller of the allegedly infringing products and was not involved in their design. (Mem. in Opp'n at 6, 11.)

## III. The instant Motion

Abrahamson and Wink now move to dismiss, arguing that they are not subject to personal jurisdiction in Minnesota and that venue is improper here. In the alternative, they argue that it would be more convenient to litigate this case in the Northern District of Texas. Target has joined the Motion insofar as it seeks to transfer venue.

### STANDARD OF REVIEW[3]

■ 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A court faced with a motion to transfer, therefore, must undertake a two-part inquiry. "The initial question ... is whether the action might have been brought in the proposed transferee district. If so, the Court must [then] consider the convenience and interest of justice factors." *Austin v. Nestle USA, Inc.,*

---

1. Pointing to Wink's registration with the Nevada Secretary of State, CWL argues that Wink's principal place of business is in Nevada, not Texas. (Mem. in Opp'n at 9.) Yet, the registration is clear that the address listed for Wink—in Carson City, Nevada—is that of "Resident Agents of Nevada, Inc.," a process-serving entity. (Chad Decl. Ex. 11.) Notably, Abrahamson lists the same address in the registration. (*Id.*) In the Court's view, the registration does not suggest that "Wink's presence in Texas is ... dubious and transient at best." (Mem. in Opp'n at 9.)

2. There is some question regarding the separateness of Wink and BASE4, as the two share an office in Texas, although Abrahamson insists they are distinct companies observing all corporate formalities. (6/29/10 Abrahamson Dec. ¶ 4, 6.)

3. As discussed below, the Court concludes that transfer of this action is appropriate. Accordingly, the standards for evaluating the other portions of Defendants' Motion—concerning personal jurisdiction and improper venue—will not be recited herein. Notably, the Court may transfer this action regardless of whether venue is proper in this district or whether it enjoys personal jurisdiction over the moving Defendants. *See* 28 U.S.C. § 1406(a) (even if action is filed in improper venue, district court may transfer it to "any district or division in which it might have been brought"); *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 466, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962) (holding that Section 1406(a) grants district courts power to transfer cases even where personal jurisdiction is lacking); *Eggleton v. Plasser & Theurer Export Von Bahnbaumaschinen Gesellschaft, MBH,* 495 F.3d 582, 584 (8th Cir.2007) (recognizing same).

677 F.Supp.2d 1134, 1136 (D.Minn.2009) (Kyle, J.) (citation omitted).

■ As the text of Section 1404(a) makes clear, three general factors inform whether a district court should grant a motion to transfer: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. *See also Terra Int'l Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir.1997). A district court may also consider any other factors it finds relevant when deciding whether transfer is warranted. *In re Apple, Inc.*, 602 F.3d 909, 912 (8th Cir.2010) (*per curiam*); *Terra Int'l*, 119 F.3d at 691. There is no precise mathematical formula to be employed when balancing these factors, and a district court enjoys "much discretion" when deciding whether to grant a motion to transfer. *Id.* at 697.

■■ Courts must be cognizant, however, that transfer motions "should not be freely granted." *In re Nine Mile Ltd.*, 692 F.2d 56, 61 (8th Cir.1982) (*per curiam*), *abrogated on other grounds by Mo. Hous. Dev. Comm'n v. Brice*, 919 F.2d 1306 (8th Cir.1990). A "heavy" burden rests with the movant to demonstrate why a case should be transferred. *E.g., Integrated Molding Concepts, Inc. v. Stopol Auctions L.L.C.*, Civ. No. 06–5015, 2007 WL 2263927, at *5 (D.Minn. Aug. 6, 2007) (Schiltz, J., adopting Report & Recommendation of Erickson, M.J.); *Radisson Hotels Int'l, Inc. v. Westin Hotel Co.*, 931 F.Supp. 638, 641 (D.Minn.1996) (Kyle, J.). To satisfy that "heavy" burden, the movant must demonstrate that the relevant factors weigh "strongly" in its favor. *Id.*

### ANALYSIS

As noted above, the first question to be answered in evaluating whether transfer is warranted is whether this action "might have been brought" in the Northern District of Texas. Insofar as no party has argued otherwise, however, the Court considers only the second question, namely, whether the convenience of the parties, the convenience of the witnesses, and the interests of justice favor transfer. The Court concludes that they do.

■ *Convenience of the parties.* There does not appear to be any significant dispute that Texas will be more convenient than Minnesota for Abrahamson and Wink. Although the former is a California resident, he maintains an office in Texas and travels there frequently, and many of his documents relevant to this case are located there. (6/1/10 Abrahamson Dec. ¶ 13; 6/29/10 Abrahamson Dec. ¶ 9.) Similarly, Wink maintains its principal place of business in Texas, and Parker, Wink's only employee other than Abrahamson, is a Texas resident. (6/29/10 Abrahamson Dec. ¶ 2; *see also supra* note 1.)

In addition, although Target is a Minnesota corporation with its principal place of business in this state, it has joined the Motion, suggesting that it views Texas to be no less convenient than Minnesota. Its presence in this case, therefore, is neutral vis-á-vis this factor.

Lastly, it appears that Texas is equally convenient for CWL as Minnesota. While it points out that its connections with Minnesota are significant because it maintains five stores here and derives substantial revenue from this state (Mem. in Opp'n at 11), that argument misstates the issue. Indeed, by such logic, multi-state corporations like McDonald's and Microsoft could never successfully seek a venue change, because they have extensive business operations in nearly every state. *But see, e.g., Malloy v. McDonald's Corp.*, No. CV-F-08-1362, 2009 WL 1288696 (E.D.Cal. May 6, 2009) (granting McDonald's' motion to transfer); *Reiffin v. Microsoft Corp.*, 104 F.Supp.2d 48 (D.D.C. 2000) (granting Microsoft's motion to

transfer).[4] Rather, the question is whether Minnesota is a more convenient forum than Texas for this litigation, not whether CWL has significant contacts here.[5]

Despite its Minnesota connections, CWL points to no Minnesota employees who will testify in this case—indeed, it fails to identify *any* employee witnesses who might testify in discovery or at trial. Any CWL witnesses traveling from Great Britain will be inconvenienced regardless of the forum. *In re Apple*, 602 F.3d at 914. Moreover, CWL does not assert that its relevant documents are located here or that Minnesota is a convenient forum for any other reason. In fact, CWL does not even argue that Minnesota is more convenient than Texas. In the absence of any basis to conclude otherwise, the Court determines that Texas is no more inconvenient than Minnesota for CWL, a British company, to litigate this case. *See In re Apple*, 602 F.3d at 914–15.[6]

In sum, this is not a case where inconvenience will simply shift from one party to another if transfer is granted. *Graff v. Qwest Commc'ns Corp.*, 33 F.Supp.2d 1117, 1121 (D.Minn.1999) (Doty, J.). Rather, it appears that CWL will be inconvenienced no matter where this litigation is venued, while Defendants will suffer far less inconvenience in Texas. Accordingly, the convenience-of-parties factor favors transfer.

██ *Convenience of witnesses.* In analyzing the convenience-of-witnesses factor, the Court must focus on non-party witnesses, since "it is generally assumed that witnesses within the control of the party calling them, such as employees, will appear voluntarily in a foreign forum." *Austin*, 677 F.Supp.2d at 1138 (quoting *FUL Inc. v. Unified Sch. Dist. No. 204*, 839 F.Supp. 1307, 1311 (N.D.Ill.1993)); *accord Continental Airlines, Inc. v. Am. Airlines, Inc.*, 805 F.Supp. 1392, 1397 (S.D.Tex. 1992). CWL has identified one Minnesota-based non-party witness, Maggie Parish, an independent sales representative who marketed and sold One products to Target on behalf of BASE4. (6/29/10 Abrahamson Dec. ¶ 7.) Certainly, her testimony is relevant and, therefore, her residence here weighs in favor of retaining this case. On the other hand, Defendants have pointed to seven BASE4 employees with knowledge concerning the marketing and sale of One products. (*See* 6/1/10 Abrahamson Decl. ¶ 14.) Defendants also point to Parker, who has knowledge of the development of the One mark and sales of One products. (*Id.* ¶ 14(a).) Each of these witnesses resides and works in Texas. (*Id.*)

While the Court recognizes that "the convenience analysis does not simply turn on the number of witnesses each side has identified," but rather hinges on the importance of their testimony, *CSI Tech., Inc. v. Commtest Instruments Ltd.*, Civ. No. 08–450, 2008 WL 4057546, at *5 n. 9 (D.Minn. Aug. 26, 2008) (Kyle, J.) (citing *Terra Int'l*, 119 F.3d at 696), here witnesses on each side of the scale possess information concerning the same topic areas. As such, the Court believes that the

---

4. Even if a party's forum connections were dispositive of the convenience issue, the Court notes that CWL operates nine stores in Texas, including two in Dallas and one in Fairview, a Dallas suburb. (Sterling Dec. Ex. 1.)

5. CWL's decision to file suit in this district indicates that it views Minnesota as a convenient forum; it does *not* mean that Texas cannot also be convenient (or more convenient). *See In re Apple*, 602 F.3d at 914–15 (California equally convenient for Taiwanese company despite fact that it chose to sue in Arkansas); *Austin*, 677 F.Supp.2d at 1137 n. 4.

6. That CWL's counsel is located here "is of no moment" in the transfer analysis. *Austin*, 677 F.Supp.2d at 1137 n. 3.

issue devolves to one of numbers, and those numbers favor transfer because the "witnesses who are . . . located in [Texas] far outnumber . . . any Minnesota-based witnesses." *First Nat'l Bank of Minneapolis v. White*, 420 F.Supp. 1331, 1337 (D.Minn.1976) (Larson, J.).

Attempting to avoid this conclusion, CWL tries to minimize the importance of the witnesses identified by Defendants. It asserts that those witnesses possess irrelevant information, because "the central issues in this action relate to the perception of the purchasing public, not the history or operation of One or Wink." (Mem. in Opp'n at 14.) In making this argument, however, CWL ignores that its *own* non-party witness (Parish) possesses precisely the same type of information as Defendants' witnesses. It is disingenuous for CWL to argue that Defendants' witnesses have nothing to add to this case because they "only" know about the marketing and sale of One products, while at the same time arguing that its own witness, with similar information, is *"the* crucial witness" in this case. (Mem. in Opp'n at 12 (emphasis in original).)

In any event, CWL underestimates the importance of the testimony Defendants' non-party witnesses will provide. A key factor in CWL's claims under the Lanham Act is whether the One mark is likely to cause confusion in the marketplace. *E.g., Kemp v. Bumble Bee Seafoods, Inc.*, 398 F.3d 1049, 1053 (8th Cir.2005); *SquirtCo v.*

*Seven–Up Co.*, 628 F.2d 1086, 1091 (8th Cir.1980). The existence of a likelihood of confusion turns on several factors, including *inter alia* the degree to which the plaintiff's product competes with the defendant's product and the alleged infringer's intent to "pass off" its goods as those of the trademark owner. *E.g., Kemp*, 398 F.3d at 1053. An alleged infringer's marketing efforts are relevant to those questions. *See id.* at 1054–56. Accordingly, all of the non-party witnesses identified by Defendants possess information relevant to CWL's claims.

For these reasons, the second factor under Section 1404(a) also favors transfer.[7]

■ *Interests of justice.* When analyzing this final factor, courts consider:

> (1) judicial economy, (2) the plaintiffs' choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine local law.

*Prod. Fabricators, Inc. v. CIT Commc'ns Finance Corp.*, Civ. No. 06–537, 2006 WL 2085413, at *3 (D.Minn. July 25, 2006) (Kyle, J.) (citing *Terra Int'l*, 119 F.3d at 696). While many of these items are irrelevant in the present case, on balance the pertinent considerations weigh in favor of transfer.

**7.** CWL points out that nearly all of Defendants' non-party witnesses are employees of BASE4, which has a close, yet unexplained, relationship with Wink. (Mem. in Opp'n at 13–14.) As a result, it suggests that these individuals should be treated as *party* witnesses rather than *non-party* witnesses. (*Id.* at 14 (emphasis added).) This argument does not aid CWL's cause. All of the witnesses identified by Defendants possess relevant information, and thus they must be considered in the transfer analysis *somewhere*. If they are non-party witnesses, then the second factor (witness convenience) favors transfer for the reasons discussed above. And even if they are party witnesses, they would tip the *party*-convenience scale more heavily toward transfer, while the *witness*-convenience scale would be in equipoise, with Parish on one side and Parker on the other. The upshot, therefore, is that it makes no difference how these witnesses are aligned in the transfer analysis; their presence militates in favor of transfer.

CWL notes that its choice of a Minnesota forum is entitled to some deference. Yet, CWL is a foreign corporation. As the Eighth Circuit stated just three months ago:

> This court has said that "[i]n general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." *Terra Int'l*, 119 F.3d at 695. This "general" practice of according deference, however, is based on an assumption that the plaintiff's choice will be a convenient one. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). When the plaintiff ... hails from a foreign nation, that assumption is "much less reasonable," *id.* at 256, 102 S.Ct. 252, and the risk that the plaintiff chose the forum to take advantage of favorable law or to harass the defendant increases. *De Melo v. Lederle Labs.*, 801 F.2d 1058, 1062 n. 4 (8th Cir.1986). *Accordingly, a foreign plaintiff's choice of forum "is entitled to substantially less deference." Id.*

*In re Apple*, 602 F.3d at 913 (emphasis added). CWL's choice of a Minnesota forum, therefore, adds little to the interest-of-justice mix.

CWL also points out that it has asserted claims under several Minnesota statutes, and "[t]here is an appropriateness in holding trial ... in the venue that is at home with the state law that must govern the case." *Id.* at 915 (internal quotation marks and citation omitted). But CWL's main claims arise under a *federal* law—the Lanham Act. This undermines the impor-

tance of a local court deciding its claims. *E.g., Sparks v. Goalie Entm't, Inc.*, No. 4:06–cv–00602, 2007 WL 962946, at \*5 (S.D.Iowa Mar. 30, 2007); *Schoemann ex rel. Schoemann v. Excellus Health Plan, Inc.*, 447 F.Supp.2d 1000, 1005 (D.Minn. 2006) (Schiltz, J.).[8] In any event, federal district courts are "faced almost daily with the task of applying some state's law other than that of the forum state, and [they are] capable of resolving ... dispute[s] under" another state's law. *Hughes v. Wal–Mart Stores, Inc.*, 250 F.3d 618, 620 (8th Cir. 2001). Hence, this factor also is entitled to little weight in the transfer analysis.

■ In addition, however slightly these factors weigh against transfer, they are balanced out by several other facts suggesting (albeit also only slightly) that transfer is appropriate. For instance, a large corporation like CWL can bear the cost and inconvenience of litigating in Texas better than Abrahamson or two-employee Wink can bear the cost and inconvenience of litigating in Minnesota. *E.g., GMAC/Residential Funding Corp. v. Platinum Co. of Real Estate & Fin. Servs., Inc.*, Civ. No. 02–1224, 2003 WL 1572007, at \*2 (D.Minn. Mar. 13, 2003) (Kyle, J.) (relative ability of parties to absorb litigation cost in each forum relevant to interest-of-justice analysis). In addition, it is generally appropriate to transfer an action to the district that is the locus of operative facts. *Id.* ("[A] motion to transfer to the district in which the [operative] events occurred is likely to succeed.") (citations omitted). Here, the operative facts occurred in Texas, where the One mark was created (at least partially) and from which One products are marketed and distribut-

---

**8.** This is particularly true given that CWL's state-law claims may well be preempted by federal law. *See, e.g., Fair Isaac Corp. v. Experian Info. Solutions, Inc.*, 711 F.Supp.2d 991, 1004–05, 2010 WL 1875479, at \*10 (D.Minn. May 10, 2010) (Montgomery, J.); *United HealthCare Ins. Co. v. AdvancePCS*, Civ. No. 01–2320, 2002 WL 432068, at \*10

ed to re-sellers, including Target. *See, e.g., AEC One Stop Group, Inc. v. CD Listening Bar, Inc.,* 326 F.Supp.2d 525, 530 (S.D.N.Y.2004) ("[T]he operative facts in infringement cases usually relate to the design, development and production of an infringing product."); *H.B. Sherman Mfg. Co. v. Rain Bird Nat'l Sales Corp.,* 979 F.Supp. 627, 630 (N.D.Ill.1997) (same). Courts routinely transfer trademark cases to the district in which the allegedly infringing product was designed and marketed and from which it was sold. *E.g., ESP Shibuya Enters., Inc. v. Fortune Fashions Indus.,* Civ. No. 08–3992, 2009 WL 1392594 (D.N.J. May 15, 2009); *H.B. Sherman; January Enters., Inc. v. Buena Vista Television,* 41 U.S.P.Q.2d 1959 (S.D.N.Y.1997); *Carrie Forbes, Inc. v. Gap, Inc.,* No. 94 Civ. 5337, 1994 WL 693554 (S.D.N.Y. Dec. 9, 1994).[9]

Nevertheless, the Court finds that the interest-of-justice factor tilts strongly in favor of transfer for two important reasons. First, the Court harbors serious doubts whether Abrahamson is subject to personal jurisdiction here. In discussing this issue in its brief, CWL lumps all of the Defendants together, despite the well-settled rule that "[e]ach defendant's contacts with the forum state must be assessed individually." *BankFirst v. Ginsburg,* Civ. No. 08–5897, 2009 WL 465047, at *3 (D.Minn. Feb. 24, 2009) (Frank, J.); *accord, e.g., Rush v. Savchuk,* 444 U.S. 320, 332, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980) ("The requirements [for personal jurisdiction] *must be met as to each defen-*

*dant.*") (emphasis added). The best CWL points to are two trips Abrahamson took to this state and phone calls he directed here, all on behalf of One. (Mem. in Opp'n at 7 (citing 6/1/10 Abrahamson Decl. ¶ 7).) These contacts appear "too few in number and too attenuated" to support jurisdiction in Minnesota. *Sybaritic, Inc. v. Interport Int'l, Inc.,* 957 F.2d 522, 525 (8th Cir.1992) (one trip into forum by defendant's agent and telephone calls and letters sent there insufficient to establish personal jurisdiction). Transfer to Texas, where Abrahamson indisputably is subject to personal jurisdiction, would therefore serve the interests of justice. *See, e.g., Superior Edge, Inc. v. Maricopa County Comm'y Coll. Dist.,* 509 F.Supp.2d 786, 795 (D.Minn.2007) (Ericksen, J.).

Second, the Court recently became aware—via the parties' Joint Rule 26(f) report (Doc. No. 44), filed July 6, 2010—that BASE4 has commenced a declaratory-judgment action against CWL in the Northern District of Texas, seeking a declaration that it is not liable for trademark infringement through the sale of One products. *See BASE4 Group, Inc. v. Cosmetic Warriors, Ltd.,* Case No. 3:10–CV–1275 (N.D. Tex., filed June 29, 2010). It is in each party's interest, and it would conserve judicial resources, to have all of these related claims resolved in one forum. *GMAC,* 2003 WL 1572007, at *2 ("Judicial economy is served by allowing related actions to proceed in the same district."); *May Dept. Stores Co. v. Wilansky,* 900 F.Supp. 1154, 1166 (E.D.Mo.1995) (grant-

---

(D.Minn. Mar. 18, 2002) (Kyle, J.) (collecting cases).

**9.** CWL notes that One goods are "passed off" in this district, since they are sold in Target stores here. Of course, that is also true of every other state in which Target stores are located. *See ESP Shibuya,* 2009 WL 1392594, at *3 ("When a product enters the market and is sold throughout the country, this does not render every single market suit-

able as a forum for litigation. The key word, after all, is 'locus,' meaning the forum in which the harm was centered."). In any event, "the sale of allegedly infringing [products] in a forum is not as important to a claim of trademark infringement as the actual manufacture or ... application of the allegedly counterfeiting mark." *Gen. Signal Corp. v. Donallco Inc.,* 214 U.S.P.Q. 306, 317 (D.Conn.1982) (internal quotation marks and citation omitted).

ing motion to transfer to district where related declaratory-judgment action was pending; "Litigation of related claims in the same tribunal is strongly favored because it facilitates efficient, economical and expeditious pre-trial proceedings and discovery and avoids duplic[ative] litigation and inconsistent results.") (citation omitted).

## CONCLUSION

For the reasons set forth above, the Court concludes that all three relevant factors under 28 U.S.C. § 1404(a)—party convenience, witness convenience, and the interests of justice—weigh in favor of transferring this case to the Northern District of Texas. Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Defendants' Motion to Dismiss, and Alternatively, Motion to Transfer Venue (Doc. No. 5) is **GRANTED IN PART**, and this case is **TRANSFERRED** to the United States District Court for the Northern District of Texas. The Clerk of the Court is directed to take all steps necessary to effectuate this transfer in an expeditious fashion.