**SAFECO INSURANCE COMPANY OF INDIANA, et al., Plaintiffs,**

v.

**Darlene CARLSON, Defendant.**

**Civ. No. 17–573 (RHK/HB)**

United States District Court, D. Minnesota.

Signed 08/14/2017

Christian A. Preus, Kerri J. Nelson, Bassford Remele, Minneapolis, Minnesota, for Plaintiffs.

Robert N. Edwards, Chartered, Anoka, Minnesota, for Defendant.

## MEMORANDUM OPINION AND ORDER

PAUL A. MAGNUSON, United States District Judge

### INTRODUCTION

This action arises out of injuries sustained by Defendant Darlene Carlson while driving a golf cart near her seasonal home in Arizona. Carlson's insurers, Plaintiffs Safeco Insurance Company of Indiana and Safeco Insurance Company of America (collectively using the singular, "Safeco"), commenced this action seeking a declaration that she is not entitled to benefits under its policies. Presently before the Court is Carlson's Motion to dismiss for improper venue or, in the alternative, to transfer to the United States District Court for the District of Arizona. For the reasons that follow, her Motion will be denied.[1]

### BACKGROUND

Carlson is a retired chemist and "snowbird," residing the majority of the year in Stillwater, Minnesota, and the remainder (when the Minnesota weather turns cold) in Arizona. (See Carlson Aff. ¶ 4; Def. Mem. at 1 & n.3.)[2] There, she resides in a 55-and-over retirement community near Tucson known as "Saddlebrooke," in which residents often use golf carts for transportation. (Def. Mem. at 1.) On October 31, 2014, Carlson was driving her golf cart when another Saddlebrooke resident, John Ziats, abruptly turned his cart in front of hers, causing her to swerve to avoid a collision. (Id. at 1–2.) Carlson's cart flipped, pinning her underneath and causing her serious injuries. (Id.)

Carlson sued Ziats in Arizona state court, ultimately recovering the limits of his insurance coverage. That recovery, however, was insufficient to fully reimburse her medical expenses. (Id. at 2.) Accordingly, she turned to Safeco for underinsured-motorist and personal-injury-protection ("PIP") benefits. Carlson and her husband had purchased from Safeco, through a Maplewood, Minnesota-based insurance agent, two policies (an automobile policy and an umbrella policy) insuring four vehicles—though not the golf cart—registered at their Stillwater, Minnesota address. (Miller Aff. ¶ 2.) Safeco denied Carlson's claim and then commenced this action, seeking a declaration that its poli-

---

1. The Court notes that many of the "facts" recited below are simply assertions of Carlson's counsel in her memoranda, devoid of evidentiary support. Regardless, taking them as true, they do not alter the outcome of the Motion.

2. Carlson has submitted her Memorandum twice, once as an attachment to her Motion (see Doc. No. 7) and once on its own (Doc. No. 10). The Court's references to "Def. Mem." (and the corresponding page numbers) are to the freestanding Memorandum, Docket No. 10.

cies do not cover her injuries. Carlson responded by moving to dismiss or transfer to Arizona. The Motion has been fully briefed and is ripe for disposition.

## ANALYSIS

*Dismissal*

■ The precise basis for Carlson's request to dismiss this case is somewhat confusing. On one hand, her Motion invokes Federal Rule of Civil Procedure 12(b)(3), which permits a court to dismiss an action laying venue in the wrong federal district. (Doc. No. 7 at 1.) Yet, she does not further discuss Rule 12(b)(3) in her brief. She *does* note that the general venue statute, 28 U.S.C. § 1391(b), permits venue in (1) the district in which the defendant resides, (2) a district in which a substantial part of the events giving rise to the claim occurred, or (3) any district in which the defendant is subject to personal jurisdiction, if there is no other district in which the action may otherwise be venued. (Def. Mem. at 10–11.) But she makes no *argument* based on this statute, and she acknowledges repeatedly that she resides in Minnesota (at least part of the time). See 28 U.S.C. § 1391(b)(1) (venue proper in district where defendant resides).[3] Moreover, this is a declaratory-judgment action concerning insurance coverage, and hence a substantial part of the events occurred in Minnesota because it is undisputed the policies in question were purchased and

issued in this state. See, e.g., Arch Specialty Ins. Co. v. Ent'mt Specialty Ins. Servs., Inc., No. 04 Civ. 1852, 2005 WL 696897, at *7 (S.D.N.Y. Mar. 24, 2005) (venue proper in New York despite underlying Texas tort litigation because "[t]he action before this Court is [ ] for a declaratory judgment concerning an insurance policy that was issued from the state of New York"). Venue is not improper in this Court.[4]

Carlson also appears to seek dismissal under the Declaratory Judgment Act, 28 U.S.C. § 2201, which provides that a court "*may* declare the rights and other legal relations of any interested party seeking such a declaration." (emphasis added). Because the statute is worded in the permissive, the Court enjoys discretion to decline to entertain this declaratory-judgment case. See, e.g., Wilton v. Seven Falls Co., 515 U.S. 277, 282, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) (noting that the Court's decision in Brillhart v. Excess Insurance Co. of America, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), "makes clear that district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdiction prerequisites"). Carlson appears to ask the Court to exercise this discretion and refuse to hear this action.

**3.** With respect to an individual, "residency" under the venue statute is synonymous with domicile. See 28 U.S.C. § 1391(c)(1). Here, Carlson makes no argument regarding her domicile, but the Court notes she maintains a Minnesota driver's license, owns a home here, and lives in Minnesota for the majority of each year.

**4.** Carlson also asserts that "the underlying contract between the parties provides for resolution of the matter **in the jurisdiction in which the events took place**." (Def. Mem. at 5 (emphasis in original).) And to be sure, if she

were correct, it might change the calculus. See, e.g., Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex., 571 U.S. 49, 134 S.Ct. 568, 581–82, 187 L.Ed.2d 487 (2013) (noting that forum-selection clauses ordinarily should be enforced). But in support of her assertion, she cites the entire 50-page automobile policy issued by Safeco (Compl. Ex. A) *without pointing to any specific portion of the policy.* And despite the Court's diligence, it has been unable to identify any policy provision providing for the resolution of coverage disputes only where the underlying events took place.

Where, as here, there exists no parallel state-court action to which a federal declaratory-judgment action might defer, the Court's discretion not to entertain the litigation is "less broad" than it otherwise might be and is to be exercised "according to a [multi-]factor test." Lexington Ins. Co. v. Integrity Land Title Co., 721 F.3d 958, 968 (8th Cir. 2013) (citations omitted). As relevant here, those factors are:

- whether the declaratory judgment sought will serve a useful purpose in clarifying and settling the legal relations in issue;

- whether the declaratory judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the federal proceeding;

- the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in its state courts;

- whether permitting the federal action to go forward would result in unnecessary "entanglement" between the federal and state court systems, because of the presence of "overlapping issues of fact or law"; and

- whether the declaratory judgment action is being used merely as a device for "procedural fencing"—that is, "to provide another forum in a race for res judicata" or "to achiev[e] a federal hearing in a case otherwise not removable"

Id. at 968 (citations omitted). Carlson does not mention any of these factors in her brief, but regardless, they do not militate in favor of declining to hear this case. This action will serve the "useful purpose" of resolving the uncertainty whether coverage exists for Carlson's injuries; does not undermine state interests and involves no possible entanglement with state courts; and does not provide a federal forum for a case not otherwise properly brought in federal court. Declining to hear this action would be inappropriate under the circumstances here.[5]

*Transfer*

Carlson next asks the Court to transfer this matter to the District of Arizona under 28 U.S.C. § 1404(a). That statute provides "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." [6] The three factors spelled out in § 1404(a)—party convenience, witness convenience, and the interests of justice— are not exhaustive, and the Court may also consider any other factors it finds relevant. In re Apple, Inc., 602 F.3d 909, 912 (8th Cir. 2010) (*per curiam*); Terra Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688, 691 (8th Cir. 1997). There is no precise mathematical formula, and the Court enjoys "much discretion" when deciding whether to transfer. Terra Int'l, 119 F.3d at 697. Nevertheless, "[c]hange of venue . . . should not be freely granted," In re Nine Mile Ltd., 692 F.2d 56, 61 (8th Cir. 1982) (*per curiam*), overruled on other grounds, Mo. Hous. Dev. Comm'n v. Brice, 919 F.2d 1306, 1311 (8th Cir. 1990), and hence Carlson bears a "heavy burden" of showing that transfer is warrant-

---

**5.** The Court rejects Carlson's assertion that Safeco was forum shopping by commencing this action in Minnesota. (Def. Mem. at 7.) Indeed, it should hardly surprise that Safeco might sue here, the state in which Carlson primarily resides and the one in which the insurance policies in question were purchased and issued.

**6.** The Court assumes, without deciding, that this action "might have been brought" in Arizona.

ed, Austin v. Nestle USA, Inc., 677 F.Supp.2d 1134, 1137 (D. Minn. 2009) (Kyle, J.).

■ Having considered the pertinent factors here, the Court concludes that this action should not be transferred. Indeed, *none* of the factors set forth in § 1404(a) weighs in favor of transferring this case.

As to the convenience of the parties, it is difficult for the Court to conceive how Arizona is a more-convenient forum for Carlson than Minnesota when she spends more than half her time in this state. Indeed, she does not even try to convince the Court otherwise.[7] While Arizona might also be a convenient forum for her, that is not the issue; what matters is whether Arizona is *more* convenient than Minnesota. See Austin, 677 F.Supp.2d at 1137 n.4. Moreover, Safeco will be somewhat burdened wherever it litigates this case, as its home office is in Boston, Massachusetts—yet, Minnesota is substantially closer to Boston than Arizona. If anything, therefore, this factor *favors* litigation in this state. See Van Dusen v. Barrack, 376 U.S. 612, 645–46, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) ("Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient.").

■ The convenience-of-witnesses factor, too, does not militate toward transfer. When analyzing this factor, the focus is on non-party witnesses, Austin, 677 F.Supp.2d at 1138, and the movant must "clearly specify [those] witnesses . . . and must make a general statement of what their testimony will cover," KGM Contrac-

tors, Inc. v. Heavy Haulers, Inc., Civ. No. 16-3638, 2017 WL 2437239, at *4 (D. Minn. June 5, 2017) (Ericksen, J.) (citations omitted); accord, e.g., Valspar Corp. v. PPG Indus., Inc., Civ. No. 16-1429, 2016 WL 6534414, at *4 (D. Minn. Nov. 3, 2016) (Nelson, J.). Here, however, Carlson has not identified *any* non-party witnesses or provided the substance of their proposed testimony. Instead, she baldly asserts "most of the non-party witnesses will reside in Tucson" (Def. Mem. at 6), presumably because her medical providers and witnesses to the accident are located there (see id. at 3). Yet, this is not a tort action, and Ziats's underlying liability has already been established; this is a declaratory-judgment action based on the terms of an insurance policy, which presents a *legal* question, as Carlson herself recognizes. (See Def. Mem. at 8–10.) She "entered into [her] insurance policies with Plaintiffs in the District of Minnesota, and it is these policies that are directly at issue in this action—not the underlying liability issues in the [Ziats] [l]awsuit." Charter Oak Fire Ins. Co. v. Burlington N. & Santa Fe Ry. Co., Civ. No. 16-140, 2016 WL 3004628, at *3 (D. Minn. May 24, 2016) (Ericksen, J.). So while witnesses to the accident "might be relevant to a liability analysis in the [Ziats] [l]awsuit[,] [they are not] relevant to this narrow insurance-coverage dispute." Id.

■ Finally, regarding the interests of justice, "courts consider, among other things, judicial economy, the plaintiff's choice of forum, docket congestion, each party's ability to enforce a judgment,

---

7. That Carlson has Arizona counsel "is of no moment" in the analysis. Austin, 677 F.Supp.2d 1134, 1137 n.3; accord, e.g., Nelson v. Soo Line R.R. Co., 58 F.Supp.2d 1023, 1027 (D. Minn. 1999) (Doty, J.) (the "convenience to . . . counsel is not a factor to be considered in deciding the propriety of transfer") (citations omitted); Trimble v. Nat'l R.R.

Passenger Corp., No. Civ. A. 97-1820, 1997 WL 381775, at *2 (E.D. Pa., June 27, 1997) ("The location and convenience of counsel are not pertinent factors in deciding a § 1404(a) motion to transfer."). In any event, the Court notes that Carlson also is represented by a Minnesota attorney.

obstacles to a fair trial," and similar issues. Austin, 677 F.Supp.2d at 1139. Yet again, Carlson does not analyze any of these considerations in her Motion papers, and most appear irrelevant in the analysis. However, Safeco's choice of a Minnesota forum is entitled to some weight, and with the remaining factors, such as judicial economy and docket congestion, not thumbing the scales, this factor, too, militates against transfer.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Carlson's Motion to Transfer or Dismiss (Doc. No. 7) is **DENIED.**